For example, the user information screen may allow the user to add/edit the following information into the database:
   User Name
   Sponsor Name
   Address
   City
   State
   Zip Code
   Telephone
   Fax
   Email
   Username
   Password
   Active User (yes or no)
   Administrator User (yes or no)

Computer modules preferably contain the screen forms for entering and editing sponsor user and new sponsor user information. These modules also may screen users for administrator privileges, for example, before allowing the user to edit records.

Many of the above-described steps preferably also apply to a claimant attorney, i.e. an attorney that represents an individual or company that has dispute or has initiated a lawsuit with a sponsor who has entered into a participation agreement to use the system.

The attorney may be notified, for example, by regular mail, that he or she can login to the website and submit a specified number, for example three, of demands to satisfy a claim according to preestablished conditions. The attorney may be required to sign a participation agreement, preferably mailed to him or her, before given the proper login credentials. Once the attorney signs and forwards the agreement to the system administrators, the attorney is given the proper login credentials.

In a similar manner, a claimant may contact the system to submit a dispute without going through an attorney. The claimant may be required to sign or otherwise acknowledge being bound in accordance with the participation agreement, and in some cases tender some form of payment, to engage the system.

As in the case of sponsor or users, the claimant attorney opens his or her web browser and accesses the system website (See FIG. 4, step 10). The attorney, however, chooses an "enter as Attorney" option provided on the menu that appears.

In step 11, the attorney is presented with the choice of reviewing cases placing demands on cases assigned to the attorney. Preferably a menu is provided in which the user may choose one of three links to separate functions via a menu bar on the left-hand side of the screen. As in the case of the sponsor user, the claimant attorney's choice is saved through intermediate login and contract screens which follow.

The program next moves to step 12 in which the user must first log into the system before making demands or viewing cases. A "Login" computer file for an attorney similar to the "Login" file for the sponsor preferably implements this step. Preferably, the user must enter a case identification number, a security code, for example, an internally generated random number which functions as a password), and an attorney security code (preferably, a code generated by the sponsor). If these do not match the information known by the database, the user is shown an error screen with the option to try again.

As in the case with the sponsor user, step 13 shows the claimant attorney a system participation agreement if the correct name and password were entered with the same options and results discussed previously. A "License" file similar to the "License" file for the sponsor user preferably implements this step.

If the user agrees to the terms of the agreement, he or she proceeds to the original menu choice (reviewing cases or making demands). Alternately, the system may be designed to send the user to a main menu with the options of obtaining case information, placing a demand for the next round of the particular claim or settling a different case. A "Login-Results" file and a "Disagree" file similar to corresponding files for the sponsor—user follow the "License" file to implement this step depending on whether the claimant attorney agrees or disagrees. Similarly, "Logout", "Access-Denied", and "Default" files corresponding to similar files for sponsor users preferably are provided.

If the case information option was selected, a case information screen is provided which preferably allows the claimant attorney to view the following information from the database:
   Case Name
   Status
   Claimant Name
   Attorney name
   Attorney firm
   Attorney address
   Attorney city
   Attorney state
   Attorney zip
   Attorney telephone
   Attorney fax
   Attorney email

Preferably, the screen displays the current status of the case with the corresponding details of the case without the ability of the attorney to edit any of this information. A module controlling the case status process may be written to hold all variables related to an attorney's cases.

An "AttorneyCaseInfo" module may also be created which displays the information an attorney needs to start making demands against a case. Preferably, the data in the module may not be withdrawn.

If the next round with current case option was chosen, the program moves to a Next Round screen which provides the attorney with the option to place a demand against a particular claim. A "CaseNextRound" module may be created to form a template which determines what the next round is, if any, and places a bid form in front of the user. Preferably, the screen provides a form box in which the attorney places the demand, and if desired menu options to either test the demand against the exposure calculator (preferably implemented by a JavaScript program applying the algorithm amounts specified by the sponsor) to determine the lowest possible amount the case will settle for, or to submit the demand.

After the attorney submits the demand for the next round, the case is submitted for comparison. A "CaseNextRound" module may be created to form a template to determine the results of the comparison based on the information that the claimant submitted on the CaseNextRound form and on the preestablished conditions. Preferably, the preestablished conditions are determined on a sponsor by sponsor basis but may also be case specific.

If the demand and the corresponding offer by the sponsor for a given round are within the preestablished conditions, the user is preferably presented with a case acceptance

screen. If the demand and the corresponding offer are not within the preestablished conditions, the user is preferably presented with a link to the next round screen, if a round is available, i.e. the previously agreed number of rounds of demands has not been used and a power round is not available. If a round is unavailable, for example, the parties have agreed to three rounds and the claimant attorney has entered three rounds of demands, the user will see a message that the case is now closed in the system.

If the user is presented with the case acceptance screen, the claim is settled and the claimant or attorney is notified of the dollar amount of the settlement, and preferably the details of where to send the final settlement request (e.g., the sponsor's address). As shown in FIG. **4**, the system preferably is designed so that upon settlement of the claim, data for the settlement is collected and stored for access and use by sponsors and claimants in establishing the settlement value in future cases.

Preferably, the system is administrated by a system administrator who may be an employee of a third party who has been granted login rights to the administration function of the system for the purpose of adding sponsors, generating reports, or performing customer service on the website.

The system administrator reaches the website by opening his or her webbrowser, pointing it at the website interface and entering in appropriate identification numbers or passwords identifying him or her as an administrator. A module may be created which contains an administrator form for the assignment or editing of a case.

The administrator may then be presented with an administrator menu which provides the following menu choices:

Sponsor options, including the options to add/edit a sponsor and to show a list and links to all sponsors;

User options, including the options to show users (preferably a list and links to all sponsor users, searchable by user name and sponsor name), to add a new user, and to delete a sponsor user;

Case options, including the options to show cases preferably by a list and links to all cases, searchable by case name, sponsor name, start date, end date and status, to assign a new case, and to delete a case; and

Site options (testing modules) including the options to clear cookies for the purpose of losing stored login information, to logout for the purpose of logging out the system and if desired to clear cookies, and to show login status for current login details.

Preferably, modules may be created to facilitate these options. For example, an "AdminNewSponsorUserEntryForm" module may be created which contains an entry form to enter a new sponsor user. Preferably, this form is different from the regular form because of the username checking that occurs during the user's interaction with the page.

An "AdminGetSponsor NewCase" module may be created which chooses a sponsor for the purpose of adding a new case. Preferably, the identity of the sponsor should be known when a case is added so that the case may be properly assigned to a sponsor user.

An "AdminShowCases" module may also be created which shows all open cases in an administrator form.

An "AdminSponsorUserDataEntry" module may also be created to hold a template which inserts or updates a sponsor user. The module makes a query to obtain the primary identification of the user, if the system does not have this information, in order for the system to set an edit link.

An "AdminSponsorUserEntryForm" module may also be created to hold a template representing the entry form for sponsor user administrator information.

An "AdminUserShow" module may also be created which contains an administrator form to show all users.

A "CaseDataEntry" module may also be created which contains a form to enter/insert cases into the database.

If the Add/Edit a Sponsor option is chosen, an Add/Edit a Sponsor screen preferably appears to allow the administrator to view/edit the following information from the database:

Sponsor name

Address

City

State

Zip Code

Phone

Fax

Mail

Algorithm amount

Algorithm percentage

System ID

Active Account (yes or no)

"SponsorDataEntry", "SponsorEntryForm", and "Sponsor Show" modules may be created to add a new sponsor to the database and show a return page, to contain an entry form to enter a new sponsor, and to show a table of all sponsors entered into the system.

"ValidateNewUserName" and "ValidateUserName" modules may be created which check to see if a username exists in a sponsor table and if so, display an error message. Preferably, these modules are called from a JavaScript lost focus event. The ValidateNewUserName module preferably gives no consideration to the current username as it assumes that there is none.

The Delete User option provides the administrator with screens in which the administrator can change, delete or add information to any sponsor user's record as in the case with the sponsor administrator's remove a user option. Preferably, a "DeleteUser" module and a "RemoveUser" module may be created which show the form that allows a user to delete a sponsor user and perform the database call to remove a user.

The Add/Edit case option provides the administrator with an Add/Edit case screen similar to the sponsor administrator's Add/Edit Case screen. In addition, the system preferably allows the administrator to add case status information including:

Case Status

Last sponsor edit (date-time)

Edited by

Sponsor name

Last attorney edit (date-time)

Last administrator edit (date-time)

A "DeleteCase" module and a "RemoveCase" module may be created to show the form that allows the user to delete a case and to perform the database call to remove a case.

Preferably, the system also provides a report writer or searchable module of case information for reporting purposes. By querying the report writer, the status of any number of cases may be viewed by the administrator for the purposes of internal reporting.

Preferably, case information may be searched based on the following criteria:

Case Name

Sponsor name

Status

Assigned date (start and finish dates)

Modified criteria (start and finish dates, for example, all records modified in a particular day)

Show only records unmodified by an attorney

The selected platform and hardware to implement the system should be scalable enough to handle large loads of traffic and data, while being responsive to user requests.

Similarly, the database chosen should be scalable enough to handle a distributed data environment, and to be able to handle large loads of data, while being responsive to user requests.

The application server likewise should be scalable enough to handle a distributed data environment, and to be able to handle large loads of data, while being responsive to user requests. Preferably, the application server is a popular platform in which to build applications of this type in order to support future changes, add-one, modifications, etc.

The server preferably is an open architecture computer that has the ability for failed hardware parts to be replaced swiftly. This configuration also maintains the availability to increase the power of the machine or demand. For example, a computer having an Internal Pentium 400 MHz Processor, with 128 MB SDRAM, a pair of multi-Giga Byte Hard Drives, a Promise PCI-RAID Level O Controller or a RAID Level 5 Controller, a 32×CD-ROM, and 3-COM 10-BaseT Ethernet Card is suitable for use in the system.

The platform for use in the system preferably has the ability to work with open database systems, provide a reliable and scalable platform for Internet and line of business applications, and offer breed file and print services that give users easy and effective access to information and resources. For example, Microsoft Windows NT Server 4.0, or 4.0 (Enterprise Edition) system, a powerful multipurpose server operating system, is a suitable platform because of its broad support of many application servers, its scalability to support the system of the present invention and its popularity with developers who create applications of this type. The platform preferably integrates the following services into underlying operating system infrastructure:

Built-in networking and communication services

Comprehensive Web services for the Internet and corporate intranets

Complete platform form for distributed applications

Enterprise-wide directory services

Integrated and robust security services

Easy-to-use and flexible management services.

The system of the present invention preferably uses a webserver, such as Microsoft Internet Information Server 4.0, that offers proven scalability and tight integration with the operating system and other products used in the system. The web server preferably includes publishing features, customizable tools, and technologies that permit the creation of Web pages, the publication of information to the World Wide Web, the sharing of files and data on operating systems such as Windows NT, Novell NetWare and UNIX servers, and over numerous databases, including Microsoft SQL Server, oracle, and Sybase databases, and the search capacity for content in HyperText Markup Language and Microsoft office document types, and multiple languages.

Preferably, the webserver offers process isolation, a feature which protects applications and Web sites from failure caused by misbehaving components or Web-applications on the server by running them in separate memory spaces. The webserver should also have, when combined with the operating system, built-in distributed application services that automatically scale to serve thousands of simultaneous users.

Preferably, a high performance, open architecture, scalable database, such as Microsoft SQL Server 6.5 or 7.0, is used in the system.

In one arrangement, the computer program is preferably one which provides a scalable platform to deliver high performance Web applications with any major Web server on Windows or Solaris. Allaire ColdFusion Application Server 3.1 and its cooperating ColdFusion Markup Language are suitable for use in developing the system.

In another arrangement, the computer program is preferably one which provides a scalable three-tiered platform to deliver high performance Web applications with any major Web server on Windows or Solaris. The front end is ASP/HTML, the middle tier is Com Object written in C++ or JAVA, and the back end is SQL Server and MTS.

Preferably, the system is hosted at a quality data center, such as a worldwide data center company which provides access to the Internet and monitors the servers to ensure that they are responding to Internet requests.

Although in the basic configuration there are numerous advantages to exclusively dealing with the bottom line, there is a potential disadvantage in some cases due to using specific, discrete and quantifiable criteria. Namely, lack of flexibility for close cases. In a given round, the two parties may be very close to a settlement, but unable to consummate it because they are just outside the criteria. However, since the system does not disclose the parties' proposed amounts, they will have no idea how far apart, or close, they are. For example, if, to settle the claim the differential must be within $10,000, the same result—no settlement—will be reached by the basic system or method whether the differential is $10,005 or $75,000.

Optional Additions

To increase the number of claims which could possibly be settled, other optional features can be added. In particular, if the adverse parties do not meet the criteria used in normal rounds but are not far off, settlement may still be possible. Through use of a neutral facilitator, a "power round" or a combination of the two additional claims can be efficiently and expediently settled.

A facilitator may be optionally employed to communicate a "nudge" to one or more parties to a dispute into submitting a value which is more likely to result in a settlement. The facilitator acts as a neutral automaton, in that it operates in a mechanistic fashion. However, it may in fact be a live person, a computer or some combination of the two. FIG. 5 shows a representative basic system further incorporating the facilitator option. As described above, the system includes a main processor and storage representatively illustrated for simplicity as a server **50** including one or more microprocessors and memory, and an associated secure database **52** stored disk and/or tape accessible to the server. The facilitator option includes, as a minimum, rules or constraints **54** that govern the kinds of encouraging statements that facilitator may use. As shown, the facilitator is implemented so that either the completely automated or partly automated mode may be used. For the completely auto mated mode, the main processor is guided by programmed rules a constraints and directly communicates with the negotiating entities via the on-line interface **56** illustratively shown connected (by communication links **58**, **60**) to some entity's telephone **62** and another entity's computer **64**. Alternatively a separate facilitator processor **66** may be

used to formulate encouraging statements or access available information in order to identify one or more appropriate communications. The facilitator processor **66** communicates with the main processor to provide information for usage by the main processor, either as communicated, or after further formatting or processing. In the simplest case the facilitator processor **66** provides communications in a "ready to go" format, and the main processor merely acts as a conduit. In more complex cases, the main processor may be separately programmed to make further decisions, for example, to select from among provided encouraging statements, or to reformat a selected encouraging statement for communication to one or both entities. The facilitator may also have access to stored information in the secure database, such as offers, demands, prior settlements, geographic information, etc. The facilitator processor **66** may also include a conventional display **68** and input device(s) **70** which allow a live person to act as part of the facilitator **66**. The facilitator operates in accordance with a set of prescribed rules, distinct from the criteria for settlement. To perform its function, the facilitator may, in some arrangements, be privy to information in a round that is not revealed to the adverse parties or their representatives. For example, the facilitator may know one or more of: the offer and demand in a given round, the actual numerical differential between the two, the percentage differential between the two, the amount of change or "delta" by either or both entities that would trigger a settlement of the claim, some other information indicative of the potential for settlement, or any or all of the foregoing. Ideally, the facilitator will know the differentials or delta, rather than specific offers or demands, in order to insure disclosure of one party's information to an adversary does not inadvertently occur, particularly when the facilitator implementation involves a human being. Stated another way, the facilitator has some basis for knowing how close to a settlement the parties are, even if the facilitator does not know specifics for either party's proposed settlement figure in one or more rounds.

In the simplest instance, the facilitator may get involved before the first value is provided by a particular party. In that case, the facilitator would likely use information provided by the parties during registration in conjunction with past settlement information to provide a starting point for negotiations. For example, the facilitator might initially communicate with one or more of the adverse parties with a statement regarding the range of past settlements on record for a similar dispute.

By way of example, assume a claimant has been injured and initiated a lawsuit in a particular jurisdiction. The claimant submits the claim to a dispute resolution system incorporating a facilitator. The claimant believes the injury merits a $200,000 settlement. Prior to the claimant submitting any values usable in a round, the facilitator encourages the claimant with the statement "Similar claims have settled in your jurisdiction for between $38,000 and $55,000." The claimant will thus have an indication that their expectation is unrealistic. As a result, the claimant may decide not to pursue the dispute resolution, or may decide to try anyway. As a result of the encouraging, the claimant will ideally provide more realistic demands, thereby increasing the prospect for settlement from the outset.

Alternatively, or in addition, the facilitator could get involved in between one or more rounds. The advantage here is that the facilitator now has available some information relating to the current state of the parties expectations for the particular dispute. Once that information is available, the facilitator would communicate with one or both adverse parties in a neutral fashion in order to induce either or both to adjust their proposal to cause a settlement.

Since it is important that each party's proposed values remain undisclosed to any adversary, communications which either directly communicate amounts or deltas or indirectly allow calculation or reasonable estimation of the amounts are most preferably not used. Of course, in particular implementations, there may be an unusual case where a more specific communication is warranted, but which might allow a party to reasonably estimate the adverse party's proposed number. Assume, for example, the extreme instance where the two parties' proposals were, respectively, $67,100 and $66,000 and the differential for settlement was agreed to be $1,000. The parties differ by only $1,100. In this instance, a communication to both parties indicating "If you each give in on your amount, you WILL almost certainly have a settlement" would probably tell both parties that they were extremely close to settlement and, hence, allow an estimation of what the other entity had proposed. Nonetheless, in such an extreme case, even if the parties were specifically told the proposals they would likely give in to settle. Thus, the prompting or encouraging can significantly increase the chances of a settlement.

In the specific case of a human facilitator, guidelines for formulating neutral communications and/or a set of proposed communications to be adhered to would preferably be used in order to limit the exercise of discretion and constrain the actions of the facilitator. This minimizes the possibility that either party's proposal can be estimated or known. In this manner, a greater degree of flexibility is achieved relative to a fully automated facilitator since the human facilitator can exercise some discretion however, that discretion would be limited.

In the case of a fully automated facilitator or a human acting in conjunction with computer guidance, the rules or guidelines would preferably be programmed into the computer or part of a facilitator accessible knowledge base. These optional configurations more severely limit the discretion of the purely human facilitator, but the computer guided human still allows one or both parties to have human interaction during negotiations, if it is desirable.

Irrespective of the whether the facilitator is a human being, a computer or some combination of the two, the statements made in the communications should be similar. Depending upon factors such as: the identity or sophistication of the parties, the experience of the parties with the particular dispute resolution arrangement described herein, geographical considerations, etc., the statements used as prompts or encouragements may be more or less colloquial. Additionally, the statements should generally have a positive or encouraging bias in most instances so as to reassure the parties that the prospect for settlement is good. The following are a few examples considered to be representative, but by no means exclusive or exhaustive, acceptable statements or prompts:

    a) "The insurance company will increase their offer if you decrease your demand."

    b) "The claimant has significantly adjusted her demand downward, but the offer must also be increased."

    c) "You are close to a settlement but you still must give in some."

    d) "Settlement in the next round is a realistic probability if you adjust your [offer/demand]."

    e) "The parties are yards, not miles, apart."

    f) "The parties should consider reviewing the settlements reached in similar cases before the next round."

g) "You should consider that during your negotiation two similar cases settled, one for $125,000 and the other for $138,000."

As an optional alternative, or supplement, to use of a facilitator, a "power" round may be used. A power round is an additional round which, by agreement of the parties or as a result of an implementation parameter, either gives a slight advantage to one party or changes the rules in a predetermined manner, if the prescribed number of rounds does not cause settlement of the claim. Specifically, a power round may result from a specific agreement between the parties at some point in the process, or be granted based upon application of some system parameter, for example, which party was the first to engage the system for the claim, the differential in the last round relative to other rounds, some mathematical analysis of the offer and demand in the most recent round(s), the amount one or both parties have adjusted their proposal per round, an analysis of the offer and demand vis-a-vis some statistical data tabulated and/or maintained by the system regarding other settlements, or other suitably implemented consideration(s).

FIG. 6 shows a simplified program flow when the system includes a power round. The negotiation starts (100) when one entity submits at least one value. Once the system has a value from each entity (if there are only two), the processor receives one or more values from the first entity (102) and for the second entity (104) values are paired (106) and evaluated (108). If a pair satisfy the criteria in the normal manner (110) a settlement amount is communicated (112). This is essentially the basic system operation described above. If, however, the normal rounds do not result in a settlement, and all the normal rounds have been exhausted (114), the system will check to see if a power round for the negotiation is available (116). If not, the case does not settle (118). If a power round is available, the system will then check if a power round is enabled for this particular negotiation (120). Although not required, this allows the system the flexibility to, for example, ask whether one or more entities want to "buy" a power round, invokes a facilitator intervention (if available), prompt for criteria modification or such other modifications or features considered desirable. If the power round is not enabled (122), due to lack of willingness of an entity to buy one, or an inability of the negotiating entities to agree on the criteria, for example, the case will not settle (124). If the power round is enabled, the system will perform a power round evaluation of one or more pairs of values using the power round criteria (126) or a power round guideline agreed to by the parties. As with the normal rounds, if the power round fails, the case does not settle (128). If the power round criteria is met, the case will settle. Depending upon the particular implementation, the settlement value may be subject to adjustment. In that instance, the system will optionally further decide whether an adjustment is to be made (130), and what it should be (132). The system then communicates a settlement message (134) in the same general manner described above.

In one exemplary power round, following a three round limit, one party, typically the claimant, is prompted to submit a fourth value analysis in conjunction with the last value (in this example, the third) value of the respondent. In this scheme, the system retains, rather than discards, at least the respondent's last value from the final normal round until the power round is complete. The claimant's fourth submission is then analyzed with the respondent's value used in the third round against using a specified criteria. Depending upon the particular system, the criteria used in the first through third round can still be used, or a new criteria can be applied. For example, if the criteria applied in the first through third round was a specified percentage, the system could utilize a different criteria, for example, by changing from the percentage differential to a fixed sum differential, widening the percentage differential, increasing the sum differential, or applying some other preselected criteria agreed to by the parties, the particular criteria allowed or applied in the power round vis-a-vis the criteria in a normal round being an implementation choice.

In any event, if the power round criteria is then satisfied, the case would settle. If not, the case would not settle. Even with the optional power round, once a settlement is, or is not, reached all offers and demands from all rounds that have not already been deleted are discarded.

Another example of a power round is to allow one party to submit multiple additional values (either offers or demands) which are each applied against the last value submitted by the adversary, until either a settlement is reached or the party gives up.

Another example of a power round is to change the settlement criteria for the final round. For example, in a five round scenario, the first four rounds would proceed using a common criteria, but for the fifth, a new or modified criteria would be applied. For example, the parties may have agreed that if a fifth round was required, the system would widen the percentage differential by 2%, increase the actual differential upward by $1,000, or allow some specified adjustment to the formula applied, by some predetermined amount. Then, the fifth round would proceed as with the prior four.

In another power round variant, all of the rounds proceed according in the normal manner and, if the result is no settlement, one or more of the earlier rounds are sequentially rerun under a new agreed to criteria. This power round variant requires keeping all the values until either the case settlement criteria is satisfied or completion of the power round still does not result in a settlement.

In yet another variant, each of the rounds is rerun but the criteria is incrementally changed. For example, if the parties agree to a 3% widening in percentage each round could be rerun, first with a 1% widening, then with a 2% widening, etc. If at any point the criteria being applied is satisfied, the dispute settles. Similarly, a widening by $6,000 could be implemented all at once by an actual widening of $6,000 per round, or for example, by sequential changing the amount in steps by $6,000, $4,000, $2,000 and $1,000 in each of the 1st through 4th rounds or $2,000, $4,000 and $6,000 in a 3 round negotiation.

It is contemplated that still other power round variants may be straightforwardly implemented to similar effect, the important point being the provision of some additional opportunity for settlement using known, although possibly different, parameter(s) compared to a normal round.

As a further implementation detail, it may be desirable to impose some "cost" in return for the power round. For example, if one party gets an advantage in a power round, that party may be required to agree to a previously disclosed adjustment which will be taxed against the ultimate settlement. In other words, in this variant, a party is able to "buy" a power round at a prescribed cost. For example, if the normal payment amount would be based upon the median of the two values that triggered the settlement, a power round settlement payment calculation might involve some adjustment to less than the median for the claimant or more than the median for the sponsor or defendant. In other words, assume a settlement was triggered by an offer of $50,000 and a demand of $55,000. In a round where the normal

US 6,954,741 B1

25

payment amount would be the median, the normal payment amount would be calculated at $52,500. In a power round, the payment might only be $51,250 to the claimant because the claimant agreed to a $1,250 fixed value adjustment or a calculated adjustment of 50% of the difference between the offer and median in order to buy a power round. Similarly, if the respondent rather than the claimant bought the power round, the payment might be $53,750.

It will be appreciated that, numerous types of adjustments may be made the important point being, there is be some quid-pro-quo on the part of the par ty buying the power round. Stated another way, this type of power round poses the question: "Would you give in by <some quantity> to have another chance to reach an acceptable settlement?

It will now further be evident that alternative arrangements can combine the use of a facilitator to prompt for the use of a power round or only use the facilitator for a power round. In one scenario, the facilitator might be the one who suggests the power round after a series of unsuccessful rounds. In another instance, the facilitator might suggest changing the criteria for a power round without suggesting a particular change. This would allow for a greater possibility for settlement while not inviting either party to speculate regarding their adversary's proposals. Thus, the intervention by the facilitator would not affect the neutrality of the system. In yet another instance, the facilitator could intervene immediately upon a power round being "bought" to, for example, provide a statement derived from the tabulated data from prior settlements.

By way of example, a claimant buys a power round in return for a $3,000 decrease in settlement payment. In this power round, the offer from the last round will be compared against a new demand. The last offer was $100,000, the last demand was $118,000, so the difference is $18,000. Assume that, in order to settle, the offer and demand must be within $12,000. The facilitator intervenes with a factual statement, derived from the tabulated data, that: "Over 75% of similar claims to yours have settled for between $85,000 and $110,000 in this jurisdiction" or "Your last offer/demand was off by more than 15% from the average settlement paid on similar claims in your jurisdiction." Having received one of these prompts, the claimant drops the demand to $110,000 and the case settles. In this example, the payment is normally calculated as the median of the offer and demand which satisfied the criteria. Since the settlement resulted from a $100,000 offer and a $110,000 demand, the median is $105,000. However, since the settlement resulted from a power round bought by the claimant for a $3,000 reduction, the settlement payment would be reduced by $3,000 to $102,000.

Although in the basic arrangement, the settlement criteria may also differ among rounds, in some instances it is desirable to enforce a mandatory tier structure, which changes the criteria applied, based upon the demand or offer amount.

For example, the system can be set up so that for a demand or offer below $10,000, the settlement criteria may be one or both of 30% or $2,500. If either the offer or demand equals or goes over $10,000, the criteria changes to 30% or $5,000. If either the offer or demand equals or exceeds $25,000 the criteria may change to one or both of 35% or $8,000. Of course, the specific cut-off point, range within which a criteria applies, or the particular percentage and/or differential amount used within a range may vary from system to system or negotiation to negotiation. Moreover, in some instances it may be desirable to allow one or more parties to specify the particulars for one or more of the above.

26

Depending upon the implementation, it is possible for a particular demand to fall within one range and an offer to fall in another range. In that case it is preferable to require that the differential between either a) max exposure and minimum gain satisfy the broadest criteria, or b) actual differential between offer and demand satisfy the broadest criteria. Alternatively, prioritizing the usage of exposure/gain versus offer/demand, prioritizing one criteria over another, or requiring satisfaction of both criteria can be employed.

In some instances, particularly when the settlement amount is calculated to be the median, usage of a tiered arrangement can result in a settlement amount being higher than a maximum exposure or, depending upon the other options employed go below the minimum gain.

An example of such a scenario is shown in Table 2.

TABLE 2

| Submission | Criteria | Specifics |
|---|---|---|
| $10,000 | "A" | 30% or $2,500 |
| >$10,000 | "B" | 30% or $4,000 |
| $85,000 | "C" | 35% or $10,000 |

| Round | Offer | Demand | Criteria | Exposure/Gain | Result |
|---|---|---|---|---|---|
| 1 | $6,000 | | A | $6,900 | No Settlement |
|   |        | $13,000 | B | $11,050 | No Settlement |
| 2 | $8,000 |        | A | $9,200 | Settlement |
|   |        | $12,000 | B | $10,200 | Settlement |

In the above scenario, criteria A applied in both rounds for both offers because they never exceeded $10,000. Similarly, criteria B applied in both rounds for the demands because they both were greater than $10,000. There was no settlement in round 1 because neither the actual offer and demand nor the exposure/gain met the specified criteria.

In round 2, a settlement was reached because the $4,000 differential criteria was met by the offer and demand and both the A and B criteria were satisfied by the exposure/gain differential.

Since the exposure/gain governs the maximum to be paid or minimum to be received, using the median of the $8,000 offer and $12,000 demand would result in a payment of $10,000. However, since the maximum exposure based upon the $8,000 offer is $9,200, the payment amount will be set equal to that exposure rather than the median. In the reverse case, the payment amount would be no less than the minimum gain.

As a further alternative with the tiered arrangement, if the maximum exposure and minimum gain are equal, that condition could be used as a further or alternative settlement criteria. Depending upon the implementation a match between minimum gain amount and maximum exposure could be set automatically trigger a settlement and override any other specified criteria. In the case of a match between exposure and gain, that value would also override the payment amount calculation.

As described herein, sponsors and attorneys may maintain an account with the provider of the dispute resolution system if they expect to submit cases for resolution with some regularity. However, it is well known that for "contingency cases", plaintiffs' attorneys can take one-third, or more, of a settlement payment for fees, expenses and/or disbursements. Advantageously, since the system is directly accessible to non-attorneys on-line, for example, via the internet or telephone, dispute resolution is directly available to the individual without the normal risks or problems which can arise from a person acting as their own lawyer. As a result, claimants and respondents may each benefit in one or more of the following ways.

There are four potential claimant benefits which can specifically result from a claimant directly initiating entry of their dispute for automated dispute resolution in the first instance. First, since the system does not deal with the law or the facts, only the bottom line, a claimant need not be sophisticated, knowledgeable in legal nuances or a capable negotiator in order to obtain an acceptable settlement. Second, the claimant is not subject to a "contingent fee" or other legal costs, although they might be charged some "engagement fee" as evidence of good faith or to discourage the submission of insignificant claims. In keeping with the on-line implementation aspect, the engagement fee will likely be chargeable to a credit card number submitted by the directly engaging party. Alternatively or additionally, the engagement fee could be returnable if a settlement is reached, for example, if a sponsor agrees to pay a fixed fee if the dispute is negotiated using the system or a settlement is reached using the system. Third, the case may be resolved much faster than would be the case through conventional legal or dispute resolution routes since the claimant has greater control over the negotiation since they present the demands rather than authorizing an attorney to settle for no less than a specified amount. Finally, as will be discussed in greater detail below, use of the system may result in the claimant receiving their payment faster and/or more conveniently.

There are also at least three potential benefits when a defendant initiates the automated dispute resolution process for a given claim. First, legal fees are reduced because attorney involvement in the process will typically be minimal, if not nonexistent. Second, in some instances, a plaintiff may be unaware of the potential value of their claim and thus submit demands, leading to settlement, well below what the defendant could be forced to pay thorough conventional legal or dispute resolution channels. Finally, if a claimant can engage the system directly, rather than through an attorney, the prospect of a quick settlement goes up because delays due to backlogs or inattentiveness of attorneys to smaller claims in favor of larger ones are eliminated.

Claimants can be attracted to the system using conventional print, radio and television media, word of mouth, links on websites, partnerships with portals or web based companies, and/or through affinity program arrangements.

For example, insurance companies may offer incentives in the form of discounts on insurance products to claimants who directly engage the system. Alternatively, a company may offer an incentive, such as a higher investment rate on an annuity or reduced fees for a product if the claimant directly engages the system, a settlement is reached, and the proceeds are invested through the company. Alternatively, affinity programs can be arranged with entities such as airlines or credit card companies so that, if a settlement is reached, the claimant will receive frequent flyer mileage or a debit card for the amount of the settlement. Other suitable partnerships and affinity arrangements can be set up, for example, with entities in the travel, investment, banking, automobile, publishing, housing or big ticket item businesses. Depending upon the particular circumstance a payment between dispute resolution system provider and the affinity program partner may be involved.

Another optional variant provides a further incentive to a party to initiate entry of a dispute for automated resolution. In this variant, if initial entry of a dispute is a result of a direct contact, the party submitting the dispute is identified as an initiator. The system logs that fact for later use if a settlement is achieved. The rounds proceed according to the particular implementation used. If a settlement is reached in a particular round however, instead of calculating a settlement amount according to the normal formula, a case resolution payment using a different formula is used which favors the initiator or alternatively a windfall amount adjustment is made to the normal payment amount which would normally be used when there was no "initiator". An example of a no "initiator" instance is when the claim is first submitted by an attorney who has an account with the system. Depending upon the implementation, if a defendant can be a direct claimant, it may be desirable to require the defendant to "escrow" proceeds such that if a settlement is reached, the risk of post-settlement default is reduced. One way this can be accomplished, for small matters, is by putting through a charge in a specified escrow amount on their charge/credit or debit card. Another way to accomplish this purpose is to require the person to transfer funds from an account they hold into an escrow account maintained expressly for this purpose.

In order to reasonably assess the amount necessary for escrow, the system can utilize the case information provided to identify similar cases which have settled and, using that information, calculate an estimation of the required escrow amount sufficient to meet a settlement, if reached. The system is also preferably set up to credit any overage amount back to the defendant's credit card or account if the settlement figure reached is less than the escrow.

By way of example, a claimant with a currently pending claim arising from an automobile accident sees an article on a consumer oriented website about automated dispute resolution. This causes the claimant to go to the identified website which acts as an internet interface to an automated dispute resolution system. The claimant submits the claim to the system and is charged an engagement fee of $75. Since the claimant directly contacted the system and the respondent's insurer has not previously submitted this particular claim to the system, the claimant is flagged in the system as an initiator. At some time thereafter, the insurer agrees to also use the system for that claim. The parties agree to a number of rounds and a settlement criteria, submit their respective values and the case settles as a result of the analysis in the second round. The system is set up so that a normal payment amount would be the median of the value submitted by the adverse parties. However, as part of the calculation function, the system identifies that the initiator flag is set for the claimant. As a result, the payment is calculated differently so as to provide a windfall benefit to the claimant. For example, the claimant may receive the offer amount, an amount specified by a new formula, some percent in excess of the median amount, a fixed amount bonus, or the median might be used in place of the lower of the offer or demand in the particular formula, so as to provide a higher payment to the claimant relative to what the claimant could have obtained in the normal case.

In a similar vein, if two parties to a dispute are both individuals and the respondent is the initiator, the "windfall" would be in the form of a reduced payment amount relative to a normal payment amount.

In still other implementations, the "windfall" may only be invoked if there is an initiator and the demand and offer have crossed or pass each other, i.e. in one round the offer is less than the demand and in the next round the offer is more than the demand. In such a situation, the simplest windfall benefit to set the settlement payment to the initiator claimant equal to the full offered amount rather than the calculated normal payment amount. Conversely, the simplest windfall for the initiator respondent is to set the payment they will make equal to the demand.

It will be recognized that the specific windfall adjustment will depend upon the particular implementation used. Accordingly, the important aspect is that the system keeps track of whether a particular party is an initiator and there is some benefit which can accrue to the initiator when a settlement is reached.

A further advantage flowing, in part, from the on-line nature of the system is the ability to automatically provide immediate payment to a claimant or initiate an immediate transfer of the settlement payment or value when a settlement is reached. The system FIG. 7 is a simplified system variant which includes an interface 72 to effectuate payment to the claimant automatically. For example, the interface 72 may be to a payment card account system such that if a settlement is reached, and the claimant is a registered cardholder the claimant's credit/debit/charge/entertainment card is automatically credited with the settlement amount. Similarly, if the claimant has a smart card, stored value card, online creditable purse or module, or other on-line accessible way for the recipient to automatically (and preferably directly) receive the transfer, the system may be configured to automatically credit it with the settlement amount. Given the numerous ways known to transfer or receive value on-line and the rate of growth in new ways to do so, it will be appreciated that the basic principle is the automatic provision or transfer of value, not the particular scrip, protocol or device used to do so.

Alternatively, the claimant may provide the system with an account number into which a wire transfer of the funds may be automatically transferred.

In some instances, the interface is merely a pre-configured vehicle for communicating with an authority in order to inform the authority that a transfer is to be made. In this manner suitable arrangements may be made so that the system can convert the settlement into a non-monetary payment-in-kind or transfer. For example, through an arrangement with an airline frequent flyer program, or other program offering "points", the settlement can be converted into the appropriate amount of miles or points. Alternatively, the settlement may involve a non-monetary settlement figure which can automatically initiate a transfer of stocks, bonds, commodities, precious metals, gems, etc., lodged with an escrow agent. In such cases, the value provided by the respondent must be at least equal to the highest offer they will present. In the event of a settlement, the appropriate amount is calculated as the settlement figure and automatically transferred to the Claimant. For example, in the case of stocks, the shares will be automatically registered in the name of the claimant. In the case of precious metals, an account will be automatically opened in the claimant's name and a suitable amount will automatically be credited to that account. It will be recognized that, consistent with the description herein, automated dispute resolution would be extensible to apply to other payment-in-kind situations in a straightforward manner.

It may also be desirable to implement the system such that, in response to a settlement, an automatic transfer of title or an ownership interest in something is initiated, for example in the case where the dispute is a divorce and the payment may be made by transfer of title in a vacation home from one to the other party. In such a case, suitable documents authorizing the transfer will be executed but not filed. If a settlement is reached, the system will automatically notify the appropriate entities and provide the necessary documents to effectuate the transfer with a minimum of claimant involvement.

Additionally variants may initiate issuance of some insurance product, such as an annuity or a fully paid up insurance policy in the settlement amount.

One possible drawback to a system which allows a claimant to directly engage the system is the claimant's potential fear that, even if a settlement is reached, attorney involvement may be required in order to consummate the settlement. Advantageously, the system may be optionally constructed to address that concern. In particular, the system may be constructed to automatically generate settlement documents when a settlement is reached. As described above, when the parties engage the system one or more of the parties provide case specific information. The system contains a number of templates which can be used to generate settlement documents appropriate for the case. For example, a settlement agreement and/or release can be generated by extracting the appropriate information provided for the case and incorporating it into the template. Similarly, if sufficient information is provided for a dispute currently pending in a court, the system can use a suitable template to generate a stipulation and/or order of dismissal with prejudice, in accordance with the requirements of the particular jurisdiction. Once generated, the document can be accessed in a form conducive to printing and immediate execution or in a text format which allows further additions and/or modifications to be made to conform to local rules or custom. In the broadest sense, the on-line document feature can be likened to an having an automated clerk make a trip to the local stationary store for the appropriate legal form and type in the appropriate information. Alternatively, particular jurisdictions may restrict the form and type of document provided. As a result, the system is preferably constructed so as to take into account any such limits and restrictions within that jurisdiction and provide all appropriate disclaimers in that regard.

Multiparty Aggregation Options

Many multiparty negotiations can be directly handled as a group of two party negotiations as set forth above. However, in some cases, particularly when the claim involves a single entity against a group of entities for a claim, aggregation of the group's individual offers or demands can simplify processing.

Depending upon the particular system, the aggregation can be fully or partly blind to some or all of the parties. For example, if a plaintiff has a claim against three separate parties (collectively "the group", the group can be linked such that the system will still accept individual submissions from each. However, once received, individual submissions from each member of the group will be added to corresponding submissions of the others in the group to form one or more sets of aggregate values. The system is "fully blind" because the individual members of the group are not informed that the aggregation is being performed. An aggregate value is used in the system as if it was an offer or demand submitted by a single entity. In this system, an "AggregateValues" module can be created which sums individual values from different entities sharing a common adversary for a claim. The system will compare the aggregate value against an opposing offer or demand as described above. In other words, once aggregated, the negotiation can proceed as if it was a two party negotiation—because from the system perspective at that point, it is.

It is important to note that, as with the two party negotiation, values submitted by all members of the group are not disclosed to their adversary. Similarly, the system does not disclose the adversary's submission to any member of the group. Depending upon the particular system configuration, the submissions from individual members of the group may not be disclosed to any other member of the group.

In the case of a fully blind aggregation arrangement, individual submissions are not revealed to anyone other than the party making that submission.

An example of a fully blind negotiation is shown in Table 3

TABLE 3

Settle if (aggregate) offer is at least 75% of demand
Fully Blind (i.e. Party 1, 2 & 3 and plaintiff do not know offers are combined.

| Defendant(s) | | | Plaintiff(s) | |
|---|---|---|---|---|
| ROUND 1 | | | | |
| EXAMPLE 1: | | | | |
| Party 1 | Offer | $10,000 | | |
| Party 2 | Offer | $15,000 | | |
| Party 3 | Offer | $35,000 | | |
| | Total | $60,000 | Demand = | $65,000 |
| | Case settles for $62,500 | | | |
| Party 1 contributes $10,416.67 (10,000/62,500 × $62,500) | | | | |
| Party 2 contributes $15,625.00 (15,000/62,500 × $62,500) | | | | |
| Party 3 contributes $36,458.33 (35,000/62,500 × $62,500) | | | | |
| EXAMPLE 2: | | | | |
| | | Party 1 | Demand | $25,000 |
| | | Party 2 | Demand | $18,000 |
| | | Party 3 | Demand | $35,000 |
| Offer = $70,000 | | | Total | $78,000 |
| | Case settles for $74,000 | | | |
| Party 1 receives $23,718 | | | | |
| Party 2 receives $17,077 | | | | |
| Party 3 receives $33,205 | | | | |

A partially blind arrangement allows the group access to each other submissions. To prevent escalation in submissions by one individual based upon the submission of another on the group, it is desirable to only allow an individual access to the submissions of others in the group after all the individual values have been submitted and the values have been locked against withdrawal or change.

An example of this type of partially blind negotiation is shown in table 4

TABLE 4

Settle if demand and offer differ by less than $2,500
Partially Blind (i.e. Party 1, 2 & 3 know each others offers after all submitted)

| Defendant(s) | | | Plaintiff | |
|---|---|---|---|---|
| ROUND 1 | | | | |
| Party 1 | Offer | $5,000 | | |
| Party 2 | Offer | $12,000 | | |
| Party 3 | Offer | $9,000 | | |
| Party 4 | Offer | $11,500 | | |
| | Total | $37,500 | Demand = | $50,000 |
| | NO SETTLEMENT | | | |
| ROUND 2 | | | | |
| Party 1 | Offer | $10,000 | | |
| Party 2 | Offer | $15,000 | | |
| Party 3 | Offer | $10,000 | | |
| Party 4 | Offer | $13,500 | | |
| | Total | $48,500 | Demand = | $45,000 |
| | Case settles for demand amount of $45,000 | | | |
| | Party 1 contributes | $9,278.35 | | |
| | Party 2 contributes | $13,917.53 | | |

TABLE 4-continued

Settle if demand and offer differ by less than $2,500
Partially Blind (i.e. Party 1, 2 & 3 know each others offers after all submitted)

| Defendant(s) | | Plaintiff |
|---|---|---|
| Party 3 contributes | | $9,278.35 |
| Party 4 contributes | | $12,525.77 |

Another partially blind arrangement allows the group to fully collaborate on a collective submission. In this case, the adversary is informed that the offer or demand is being submitted on behalf of party 1, party 2, etc. The adversary then has the option of accepting or declining. If the adversary accepts, and a settlement is reached, the claim will be settled for all parties in the group and their adversary. An example of this type of multiparty negotiation is shown in table 5.

TABLE 5

Settle if (aggregate) offer is at least 75% of demand
Partially Blind (i.e. Party A, B & D collectively submit offers as single values and plaintiff is informed, "You have a claim against Entities A, B, C & D. Offers are being submitted by Entity A on behalf of Entities A, B & D. Entity C declines to participate, if a settlement is reached you may be able to independently pursue your claim against Entity C."

| Round | Aggregate Offer | Claimant's demand | Result |
|---|---|---|---|
| 1 | $100,000 | $295,000 | No Settlement |
| 2 | $110,000 | $230,000 | No Settlement |
| 3 | $120,000 | $160,000 | Settle for $140,000 |
| 4 | $128,000 | $140,000 | |

Entities A, B and D can then work out among themselves the apportionment, specify an apportionment so that the system will calculate an amount owing for each, or apportion the amount equally among all participants.

In still another variant, once presented with the list of parties making up the group, the adversary has the option of declining to negotiate with the group, but designating some members of the group with whom they will negotiate as a group. In this manner, a plaintiff gets the ability to "opt out" one or more particular defendants, so as to attempt to preserve a claim against them, and a defendant gets to opt out one or more plaintiffs, to prevent one or more individuals, for example, those with a history of dubious claims, from riding on the claims of others.

The aggregations may also be independently performed on both sides of a claim. Thus, a group may submit offers for comparison against another group's demands. Depending upon the particular implementation, the aggregation arrangement on one side of the claim need not be the same as the aggregation performed on the other side of the claim. In other words, offers may be submitted partially blind for comparison against demands aggregated in a fully blind arrangement.

In any case, if a settlement is reached, if the group whose submissions were aggregated will pay on the claim, the payment will preferably be on a pro-rata proportional share. Alternatively, in some implementations, the members of the group can specify a payment allocation other than on a pro-rata basis.

If the group is made up of individual parties who will receive payment, depending upon the particular system, the parties will each receive their respective demands, rather

33

than some median. Alternatively, additional modules can be created which perform more complex apportionment or allocation of payments to plaintiffs.

Additional Options

Since the internet is a globally accessible media, particular embodiments may include a "ConvertEquateLocalCurrency" module created to allow adverse parties to submit offers or demands in their local currency for comparison, even if the offers are submitted in one currency and the demands in another. In this manner, each party can deal with a currency with which they are comfortable, thereby making the negotiation even more user friendly. Where disparate currencies are used, to analyze the offers and demands the system will convert the all the currencies specified to a common currency, which may or may not be the same currency as the offers and demands, for comparison. By way of example, if the offers were submitted in Japanese Yen and demands submitted in Italian Lira, the system might use Yen, Lira, or some third currency, for example U.S. Dollars, Euros, or even Thai Bhat, depending upon the particular implementation.

In a similar vein, an arrangement may be made with a currency exchange entity so that, if a settlement is reached, the claimant can be paid in the currency of choice, irrespective of the currency the respondent used to submit offers. For example, a Greek national submitting offers or demands in U.S. dollars may specify automatic payment by crediting their Athens bank account in Drachmae.

Other optional features include a "StructurePayment" module which will calculate a structured payment from the settlement amount in accordance with specific guidelines submitted buy a party. In this manner, spendthrift claimants can protect themselves by specifying that the payment not be provided as a lump sum, but rather incrementally over time. Coupled with one of the above payment options, the settlement could advantageously make monthly transfers to a stored value module, a credit card, a bank or brokerage account, quarterly payments to an insurance policy, or such other arrangements as the system provider can arrange.

Other optional features include the use of different types of communications links (e.g. optical cables or wireless connections); distributed databases; state machines; combinations of secure and non-secure servers; distributed processing; or implementing certain options such as indicators or particular functions in hardware vs. in software and vice versa. Similarly, the principles may be implemented using different types of storage such as tape, solid state, optical, magneto-optical, etc., instead of, or in addition to those described herein.

It should be understood that the above description is only representative of illustrative embodiments. For the convenience of the reader, the above description has focused on a representative sample of all possible embodiments, a sample that teaches the principles of the invention. The description has not attempted to exhaustively enumerate all possible variations or even combinations of those variations described. That alternate embodiments may not have been presented for a specific portion of the invention, or that further undescribed alternate embodiments may be available for a portion, is not to be considered a disclaimer of those alternate embodiments. One of ordinary skill will appreciate that many of those undescribed embodiments, involve differences in technology rather than differences in the application of the principles of the invention. It will be recognized that, based upon the description herein, most of the principles of the invention will be transferable to other specific technology for implementation purposes. This is particularly the case when the technology differences involve different specific hardware and/or software. Accordingly, the invention is not intended to be limited to less than the scope set forth in the following claims and equivalents.

What is claimed is:

1. An automated method of settling a dispute among adverse parties involving monetary values, submitted by the adverse parties, comprising:

receiving an engagement request from a first entity to engage an automated dispute resolution system, for a claim, and to be bound by a resolution of the claim transmitted from the automated dispute resolution system;

receiving an engagement indication from a second entity, adverse to the first entity with respect to the claim, to engage the automated dispute resolution system for the claim;

encouraging at least one of the first entity or second entity with a facilitator communication;

receiving a series of at least two monetary demands and a power round demand from the first entity;

receiving a series of at least two settlement offers from the second entity; maintaining inaccessibility of the monetary demands from the second entity; maintaining inaccessibility of the settlement offers from the first entity; comparing a first demand of the series of monetary demands with a first settlement offer in a first round to determine if a first difference between the first monetary demand and the first settlement offer is within a predetermined guideline;

if, in the first round, the first difference is within the predetermined guideline, transmitting a successful dispute resolution notification to the first entity and the second entity;

if, in the first round, the first difference is not within the predetermined guideline, comparing a second demand of the series of monetary demands with a second settlement offer in a second round to determine if a second difference between the second monetary demand and the second settlement offer is within the predetermined guideline;

if, in the second round, the second difference is within the predetermined guideline, transmitting a successful dispute resolution notification to the first entity and the second entity;

if, in the second round, the second difference is not within the predetermined guideline, initiating a third round as a power round by comparing the power round demand of the series monetary demands with one settlement offer, from the series of at least two settlement offers, to determine if a power round difference between the power round demand and the one settlement offer is within a predetermined power round guideline; and

if, in the power round, the power round difference is within the predetermined power round guideline, transmitting a successful dispute resolution notification to the first entity and the second entity; wherein at least the step or steps of comparing are carried out using a computer.

2. The method of claim 1 wherein, if in any round, the successful dispute resolution notification is transmitted, the method further comprises:

generating a case resolution payment to be paid to the first entity by the second entity which incorporates a windfall amount adjustment.

3. The method of claim 1 further including:
prompting at least one of the first entity or second entity, prior to at least one of the first, second or third rounds, for submission of a monetary value using a statement that does not reveal any demand to the second entity or any settlement offer to the first entity.

4. The method of claim 1 wherein when a successful dispute resolution notification is transmitted, the method further comprises:
calculating a settlement payment of a specified value to be paid to the claimant to settle the case; and
automatically initiating the settlement payment to the claimant.

5. The method of claim 1 further including:
automatically generating case settlement documents containing dispute specific information for transmission to the adverse parties.

6. An automated method of settling a dispute comprising:
aggregating, using automation, a plurality of values into a group value;
evaluating a pair of values for a claim in a round of at least two rounds, one of the pair being the group value;
determining, using automation, that the pair of values satisfies at least one settlement criterion; and
communicating a settlement message if the at least one settlement criterion is satisfied;
wherein the method is carried out using an automated system configured to settle a dispute that does not require a non-disputant party to use human judgment or discretion in settling the dispute.

7. The method of claim 6 further including:
aggregating monetary amounts submitted by a group as a single monetary submission; and
using the single monetary submission as the other of the pair.

8. The method of claim 6 further including:
designating an entity to be opted out of a negotiation.

9. The method of claim 6 wherein the plurality of values includes at least one value submitted by each member of a group, the method further including:
identifying, to an adversary of the group for the claim, each member of the group.

10. An automated method of settling a dispute comprising:
evaluating a plurality of paired values for a claim in a plurality of rounds;
determining, using automation, that none of the plurality of paired values satisfies at least one settlement criterion;
performing, using automation, a power round evaluation of values, one of the values having been submitted by a first entity with respect to the claim and another of the values having been submitted by a second entity, adverse to the first entity with respect to the claim; and
communicating a settlement message if the power round evaluation indicates that at least one power round settlement criterion is satisfied;
wherein the method is carried out using an automated system configured to settle a dispute that does not require a non-adverse party to use human judgment or discretion in settling the dispute.

11. The method of claim 10 further including:
receiving an agreement from a party to perform the power round evaluation.

12. The method of claim 10 further including:
determining that the power round evaluation of values should occur based upon a system parameter.

13. The method of claim 12 wherein the determining includes:
identifying a first engaging party.

14. The method of claim 10 wherein the determining includes:
determining that the power round evaluation of values should occur by analyzing a differential in at least one pair of the plurality of paired values against at least another of the plurality of paired values.

15. The method of claim 10 wherein the determining includes:
determining that the power round evaluation of values should occur based upon a relationship between at least one pair of the plurality of paired values and achieved settlements.

16. The method of claim 10 further including:
receiving an agreement from a party to an adjustment from a normal payment amount in return for performing the power round evaluation.

17. The method of claim 10 wherein the performing the power round evaluation includes:
determining that the two values submitted by the first and second entities satisfy the at least one power round settlement criterion.

18. The method of claim 17 wherein the at least one power round settlement criterion is the at least one settlement criterion.

19. The method of claim 17 wherein the at least one power round settlement criterion differs from the at least one settlement criterion.

20. The method of claim 10 wherein the performing the power round evaluation includes:
determining whether any of the plurality of paired values satisfies at least one power round settlement criterion.

21. The method of claim 10 further including:
aggregating a plurality of submissions into a group value; and
using the group value as one of the values in a pair.

22. The method of claim 20 wherein the at least one power round settlement criterion and the settlement criterion differ.

23. A method comprising:
receiving a first value from a first entity with respect to a claim in an automated dispute resolution system;
receiving a second value from a second entity with respect to the claim in the automated dispute resolution system;
determining, in the automated dispute resolution system, that a comparison of the first and second values does not satisfy at least one settlement criterion for the claim;
discarding at least one of the first and second values;
prompting, using a facilitator, at least one of the first and second entities for submission of a new value using a generic statement that does not reveal either of the first or second values; and
receiving the new value in the automated dispute resolution system.

24. An automated dispute settlement method comprising:
receiving a claim submitted by an initiator for a dispute resolution negotiation;
subsequent to the receiving of the claim, receiving a first value from the initiator and a first value from a second

entity, adverse to the initiator for the claim, the first value from the initiator and the first value from the second entity differing from each other by a differential amount;

comparing the differential amount against at least one predetermined settlement criterion;

determining that the at least one predetermined settlement criterion is satisfied by the differential amount;

calculating a settlement payment using the first values such that the initiator receives a windfall benefit; and

informing the initiator and the second entity of the settlement payment; at least one of the steps of receiving, comparing, determining, and calculating is carried out using automation.

25. The method of claim 24 wherein the calculating comprises:

if the first value from the initiator is less than the first value from the second entity and the settlement payment will be paid from the second entity to the initiator, establishing the settlement payment at a greater amount than a normal payment amount.

26. The method of claim 25 wherein the normal payment amount is between the first values.

27. The method of claim 25 wherein the normal payment amount is a median of the first values.

28. The method of claim 24 wherein the calculating includes:

if the first value from the initiator is greater than the first value from the second entity and the settlement payment will be paid from the initiator to the second entity, establishing the settlement payment at a lesser amount than a normal payment amount.

29. The method of claim 28 wherein the normal payment amount is between the first values.

30. The method of claim 28 wherein the normal payment amount is a median of the first values.

31. The method of claim 24 wherein the calculating the settlement payment using the first values such that the initiator receives the windfall benefit includes:

equating the settlement payment to the first value from the second entity.

32. The method of claim 24 wherein the first value from the initiator is one of a plurality of first values from the initiator and the first value from a second entity is one of a plurality of first values from the second entity, the method further comprising:

prompting the initiator using a non-revealing encouraging statement from a facilitator.

33. A method comprising:

settling a case by processing at least one demand submitted by a claimant and at least one corresponding offer submitted by a second entity for a claim in a round, of at least two rounds in accordance with at least one preselected criterion agreed to by the claimant and the second entity, the at least one demand and at least one corresponding offer being different from each other;

calculating a settlement payment of a specified value to be paid to the claimant to settle the case; and

initiating a providing of the settlement payment to the claimant;

wherein at least one of the steps of processing, calculating, and initiating is carried out using automation;

wherein the method is carried out using a system configured to settle a dispute that does not require a non-adverse party to use human judgment or discretion in settling the dispute.

34. The method of claim 33 wherein the providing includes:

configuring data for receipt by a stored value device which, when the data is received, will cause a stored value to be increased by the specified value.

35. The method of claim 33 wherein the providing includes:

crediting a payment card account, registered to the claimant, with the specified value.

36. The method of claim 35 wherein the payment card account is at least one of a credit card, debit card, charge card, entertainment card account.

37. The method of claim 33 wherein the providing includes:

initiating a wire transfer, in the specified value, to an account of the claimant.

38. The method of claim 33 wherein the providing includes:

electronically initiating an irrevocable transfer of property valued at the specified value to the claimant.

39. The method of claim 33 wherein the providing includes:

crediting an affinity program account registered to the claimant according to the specified.

40. The method of claim 33 wherein the providing includes:

electronically initiating an irrevocable transfer of an ownership interest to the claimant in the specified value.

41. The method of claim 33 wherein the providing includes:

electronically initiating issuance of an insurance product for the settlement value.

42. A method of consummating an on-line dispute resolution negotiation comprising:

determining that two non-equal values, submitted by adverse parties to a dispute, satisfy at least one claim settlement criterion in a round of at least two rounds such that a payment will be made from one of the adverse parties to the other of the adverse parties; and

automatically generating settlement documents for the dispute for the adverse parties;

wherein the method is carried out using a system configured to settle a dispute that does not require a non-adverse party to use human judgment or discretion in settling the dispute.

43. The method of claim 42 wherein the generating further comprises:

creating a settlement agreement identifying the adverse parties.

44. The method of claim 42 wherein the generating further comprises:

creating a stipulation of dismissal.

45. The method of claim 44 further comprising:

creating a case caption for inclusion in the stipulation of dismissal.

46. The method of claim 42 wherein the generating further comprises:

creating a release.

47. An automated claim resolution method comprising:

testing, using automation, non-equal values, submitted by adverse parties for a claim, for satisfaction of a condition, wherein the claim is resolved if the condition is satisfied;

if the condition is not satisfied, testing, using automation, non-equal power round values, one from each of the adverse parties for the claim, for satisfaction of a power round condition; and

calculating a binding settlement payment, when the power round condition is satisfied by the non-equal power round values, of an amount at least equal to a lowest of the non-equal values;

wherein the method is carried out using a system configured to settle a dispute that does not require a non-adverse party to use human judgment or discretion in settling the dispute.

48. A claim resolution method comprising:

receiving non-equal values, submitted by adverse parties for a claim, at least one of the non-equal values having been submitted following a communication of a facilitating message regarding the claim, conveyed from an automaton facilitator to at least one of the adverse parties, said facilitating message using a generic statement that is based upon information relating to the

testing the non-equal values in at least two rounds for satisfaction of a condition, wherein the claim is not resolved if the condition is not satisfied; and

calculating a binding settlement payment, when the condition is satisfied in a round by the non-equal values, of an amount at least equal to a lower of the pair of the non-equal values;

wherein the method is carried out using an automated system configured to settle a dispute that does not require a non-disputant party to use human judgement or discretion in settling the dispute.

49. An automated dispute resolution method for resolving a claim among adverse parties, the method comprising:

testing non-equal values, submitted by the adverse parties for the claim, for satisfaction of a condition, wherein the claim is not resolved if the condition is not satisfied; and

calculating a binding settlement payment, when the condition is satisfied by the non-equal values, the binding settlement payment incorporating a windfall adjustment when one of the parties is a dispute entry initiator for the claim in an amount at least equal to a lowest of the non-equal values adjusted by either a positive or negative windfall differential amount;

wherein at least one of the steps of testing and calculating is carried out using automation.

50. An automated dispute resolution method for resolving a claim among adverse parties, the method comprising:

testing, using automation, non-equal values in rounds, submitted by the adverse parties for the claim, for satisfaction of a condition, wherein the claim is not resolved if the condition is not satisfied;

calculating a binding settlement payment, when the condition is satisfied in a round by the non-equal values, of an amount at least equal to a lowest of the non-equal values; and

automatically initiating an on-line transfer of funds to at least one of the adverse parties for the amount following the calculating;

wherein the method is performed by a system configured to resolve a dispute that does not require a non-disputant party to use human judgment or discretion in settling the dispute.

51. A dispute resolution method for resolving a claim between two adverse parties in rounds, the method comprising:

automatically testing non-equal values, submitted by the adverse parties in at least two rounds for the claim, for satisfaction of a condition, wherein the claim is not resolved if the condition is not satisfied;

calculating a binding settlement payment, when the condition is satisfied by the non-equal values in a round of the at least two rounds, of an amount at least equal to a lowest of the non-equal values; and

automatically, when the condition is satisfied, generating a settlement document for the claim containing case specific information; and

wherein the method is performed by a system configured to resolve a dispute that does not require a non-disputant party to use human judgment or discretion in settling the dispute.

52. A method of automated on-line dispute resolution comprising:

maintaining an interface to the internet through which a claimant can submit demands for a claim to a dispute resolution system and receive indications therefrom such that, when the claimant submits multiple demands, via the interface, to the dispute resolution system and the dispute resolution system pairs the multiple demands with offers of settlement for the claim on a one-to-one basis, a comparison will be performed in accordance with at least one criterion, and if the at least one criterion is satisfied the claimant will be provided with a positive indication, via the interface, that the at least one criterion is satisfied, and if the at least one criterion is not satisfied, will perform a power round analysis of a demand and an offer in accordance with at least one power round criterion and, following the power round, the claimant will be provided with either a positive or negative indication, via the interface, as to whether or not the at least one power round criterion is satisfied; wherein said method does not require a non-disputant party to use human judgement or discretion in settling the dispute.

53. An on-line dispute resolution method comprising:

maintaining an interface to the internet through which a claimant can submit a demand for a claim, following receipt by the claimant of an on-line nudge from an automaton facilitator, said on-line nudge using a generic statement that is based upon information relating to the claim to encourage a settlement; and receive back a positive or a negative indication for the claim such that, when the claimant submits multiple demands via the interface, the system will pair the multiple demands with offers of settlement for the claim on a one-to-one basis and perform a comparison in accordance with at least one criterion, the claimant will be provided with an indication, via the interface, as to whether or not the at least one criterion is satisfied; wherein said method does not require a non-disputant party to use human judgement or discretion in settling the dispute.

54. A method of automated on-line dispute resolution comprising:

maintaining an interface to the internet through which a claimant can submit demands for a claim to a dispute resolution system and receive indications therefrom such that, when the claimant submits multiple demands via the interface to the dispute resolution system and the dispute resolution system pairs the multiple demands with offers of settlement for the claim on a one-to-one basis, a comparison will be performed in

accordance with at least one criterion and, if the at least one criterion is not satisfied the claim will settle, and if the at least one criterion is satisfied and the claimant is an initiator for the claim in the system, the claimant will be provided, via the interface, with an indication that the at least one criterion is satisfied and a payment amount which reflects a higher amount relative to a normal payment amount, because the claimant is the initiator; but if the claimant is not an initiator, the claimant will not be provided, via the interface the normal payment amount; wherein said method does not require a non-disputant party to use human judgement or discretion in resolving a dispute.

55. A method of automated on-line dispute resolution comprising:

maintaining an interface to the internet through which a claimant can submit demands for a claim to a dispute resolution system and receive indications therefrom such that, when the claimant submits multiple demands via the interface to the dispute resolution system and the dispute resolution system pairs the multiple demands with offers of settlement for the claim on a one-to-one basis, a comparison will be performed in accordance with at least one criterion and if the at least one criterion is satisfied, the dispute resolution system will provide a positive indication, via the interface, and automatically initiate a transfer to the claimant of an amount calculated by the dispute resolution system as a settlement figure, and, if the at least one criterion is not satisfied in the rounds will perform a power round analysis of a demand and an offer in accordance with at least one power round criterion and, following the power round, the claimant will be provided with either a positive or negative indication, via the interface, as to whether or not the at least one power round criterion is satisfied; and wherein said method does not require a non-disputant party to use human judgement or discretion in settling the dispute.

56. A system comprising:

a first value, submitted on line by a first entity;

a second value submitted on line by a second entity, the first and second entities being adverse to each other with respect to a claim, the first value being inaccessible to the second entity and the second value being inaccessible to the first entity, the first value and the second value being different in magnitude from each other;

an input connectable to an on-line interface for receipt of values therefrom;

an output;

memory connected to the input and configured to receive and temporarily store values received from the input;

a processor connected to the memory; and

a computer executable program, the program being structured to, when executed by the processor, accept a pair of values from adverse entities and return a specified result indicator based upon the application of at least one predetermined criterion to a mathematical comparison of the pair of values in a normal round and, when the result indicator indicates that the at least one predetermined criterion is not satisfied in the normal round, the program being further structured to perform a power round analysis of a power round pair of values by applying at least one predetermined power round criterion to the power round pair of values and, when a power round result indicator indicates that the at least

one predetermined criterion is not satisfied the claim does not settle, and when a power round result indicator indicates that the at least one predetermined power round criterion is satisfied, provide a power round payment value for the claim to at least one of the adverse entities via the output; and

wherein said system does not require a non-adverse party to use human judgement or discretion is settling the claim.

57. The system of claim 56 wherein one of the power round pair of values is the same as one of the pair of values.

58. The system of claim 56 wherein the at least one predetermined criterion and the at least one predetermined power round criterion are different.

59. The system of claim 56 wherein the at least one predetermined criterion and the at least one predetermined power round criterion are the same.

60. A system comprising:

at least one processor;

an automaton-like facilitator including a plurality of non-revealing entity prompts;

a first value, submitted on line by a first entity;

a second value, submitted on line by a second entity, the first and second entities being adverse to each other with respect to a claim, the first value being inaccessible to the second entity and the second value being inaccessible to the first entity, the first value and the second value being different in magnitude from each other, at least one of the first value and the second value having been submitted in one of at least two rounds following a communication from the facilitator to either the first entity or the second entity of an entity prompt of the plurality of entity prompts, said communication using a generic statement that is based upon information relating to the claim to encourage a settlement, the entity prompt further being a non-revealing entity prompt; and

a proxy including an input, an output, and a computer executable program, the program being structured to cause the processor to accept a pair of values from adverse entities via the input and return a result indicator to the proxy based upon application of at least one predetermined criterion to a mathematical comparison of the pair of values, and to provide a payment value for the claim to at least one of the adverse entities via the output when the result indicator indicates that the at least one predetermined criterion is satisfied;

wherein the system is configured to settle a dispute without requiring a non-disputant party to use human judgment or discretion in settling the dispute.

61. A system comprising:

at least one processor;

an initiator indicator, settable when an entity first enters a dispute for resolution into the system to identify the entity as an initiator which, when set for the dispute, will cause a windfall adjustment calculation to be performed;

a first value, submitted on line by a first entity;

a second value submitted on line by a second entity, the first and second entities being adverse to each other with respect to a claim, the first value being inaccessible to the second entity and the second value being inaccessible to the first entity, the first value and the second value being different in magnitude from each other; and

a proxy including an input, an output, and a computer executable program, the program being structured to cause the processor to accept a pair of values from adverse entities via the input and return a result indicator to the proxy based upon application of at least one predetermined criterion to a mathematical comparison of the pair of values, and to provide to at least one of the adverse entities, via the output when the result indicator indicates that the at least one predetermined criterion is satisfied;

i) a normal payment amount for the claim, when the initiator indicator is not set for either the first entity or the second entity, or

ii) a windfall benefit adjusted payment amount for the claim, when the initiator indicator is set for one of the first entity or second entity.

**62**. The system of claim **61** wherein the windfall adjusted payment amount for the pair of values is greater than the payment amount for the pair of values.

**63**. The system of claim **61** wherein the windfall adjusted payment amount for the pair of values is less than the payment amount for the pair of values.

**64**. A claim dispute resolution system comprising:

at least one demand submitted by a claimant for a claim and at least one corresponding offer submitted by a second entity for the claim;

at least one preselected criterion, agreed to by the claimant and the second entity, which will be applied, during analysis of the at least one demand and the at least one corresponding offer, to determine if there is a resolution for the claim;

a claim dispute resolution program constructed to, when executing on a programmed processor, cause an analysis of numbers in accordance with criteria and calculate claim settlement payments when the criteria are satisfied; and

a programmed processor executing the claim dispute resolution program, to analyze the at least one demand and the at least one corresponding offer in a round of at least two rounds in accordance with the at least one preselected criterion and, when the at least one preselected criterion is not satisfied the claim does not settle, and when the at least one preselected criterion is satisfied, calculate a settlement payment of a specified value to be paid to the claimant to settle the claim and set the settlement initiation indicator thereby automatically initiating a payment to the claimant;

wherein the claim dispute resolution system is an automated system configured to settle a dispute that does not require a non-disputant party to use human judgement or discretion in settling the dispute.

**65**. A system for automated dispute resolution comprising:

processor means for processing demands and offers;

means for introducing to the processor means, via a communications linkage, information identifying a dispute, a series of demands to satisfy a claim made by or on behalf of a person involved in the dispute, and a series of offers to settle the claim by an entity adverse to the person for the claim;

settable means for indicating whether or not to perform a power round comparison;

memory means, accessible by the processor means, for storing the information identifying the dispute, and for temporarily storing the series of demands to satisfy the claim and the series of offers to settle the claim, for use by the processor means in a series of rounds, without disclosure of the series of demands to the adverse entity or series of offers to the person;

settlement means for indicating, when set, settlements of disputes and calculating settlement values as a result thereof such that, when the settlement means is set for a round, the settlement means will calculate a settlement value equal to:

(a) a first amount, in accordance with a first preestablished formula, if the offer in the round is less than the demand and within a preestablished percentage of the demand in the round,

(b) the demand, if the offer in any round is the same as or greater than the demand, or

(c) a second amount in accordance with a second preestablished formula, if the offer is not within the preestablished condition in all rounds but the difference between a particular offer and a corresponding demand is less than a preestablished amount;

comparison means within the processor means, for receiving and comparing demands and offers against each other on a round-by-round basis, in accordance with a preestablished condition, and a power round comparison only when the settable means is set, in accordance with a power round condition, the comparison means setting the settlement means when either the preestablished condition or the power round condition is satisfied, the comparison means operating on the series of demands and series of offers until;

i) the settlement means is set, irrespective of whether the settable means is set,

ii) all of the series of demands and series of offers have been exhausted and the settable means is set, wherein the comparison means will perform a power round comparison of a power round demand with a power round offer against each other in accordance with a preestablished power round condition and set the settlement means to indicate a settlement if the power round condition is satisfied, or

iii) all of the series of demands and series of offers have been exhausted and either the settable means is not set or the power round condition is not satisfied, wherein the comparison means will set the settable means to indicate no settlement;

means for inhibiting a reuse of an unsuccessful demand, or unsuccessful offer, by the comparison means in any round that is not a power round; and

means for communicating a settlement result to the person and the entity.

**66**. The system of claim **65** further comprising:

facilitator means, constrained by a plurality of rules, for prompting, in accordance with the rules, at least one of the person or the entity prior to introducing one of the series of demands or series of offers into the processor means.

**67**. The system of claim **65** further comprising:

means for determining whether one of the person or the entity is an initiator.

**68**. The system of claim **67** further comprising:

means for adjusting the first amount, the demand and the second amount by a windfall differential when one of the person or the entity is the initiator.

**69**. The system of claim **65** further comprising:

means for on-line initiation of a transfer of the settlement value in accordance with a preference indicated by one of the person or the entity.

US 6,954,741 B1

45

**70**. The system of claim **65** further comprising:
means for generating on-line a settlement document including at least some of the dispute identifying information.

**71**. A system for automated dispute resolution comprising:
processor means for processing demands and offers;
means for introducing to the processor means, via a communications linkage, information identifying a dispute, a series of demands to satisfy a claim made by or on behalf of a person involved in the dispute, and a series of offers to settle the claim by an entity adverse to the person for the claim;
memory means, accessible by the processor means, for storing the information identifying the dispute, and for temporarily storing the series of demands to satisfy the claim and the series of offers to settle the claim, for use by the processor means in a series of rounds, without disclosure of the series of demands to the adverse entity or series of offers to the person;
settlement means for indicating, when set, settlements of disputes and calculating settlement values as a result thereof;
facilitator means, constrained by a plurality of rules, for prompting, in accordance with the rules, at least one of the person or the entity prior to introducing one of the series of demands or series of offers into the processor means using non-revealing statements;
comparison means within the processor means, for receiving and comparing demands and offers against each other on a round-by-round basis, in accordance with a preestablished condition and for setting the settlement means when the preestablished condition is satisfied;
means for inhibiting a reuse of an unsuccessful demand, or unsuccessful offer, by the comparison means in any round that is not a power round; and
means for communicating a settlement result to the person and the entity;
wherein the system is an automated system configured to settle a dispute that does not require a non-disputant party to use human judgment or discretion in settling the dispute.

**72**. A system for automated dispute resolution comprising:
processor means for processing demands and offers;
means for introducing to the processor means, via a communications linkage, information identifying a dispute, a series of demands to satisfy a claim made by or on behalf of a person involved in the dispute, and a series of offers to settle the claim by an entity adverse to the person for the claim;
initiator means for indicating, when set, that there is an initiator of entry of the dispute into the system and for identifying the initiator;
memory means, accessible by the processor means, for storing the information identifying the dispute, and for temporarily storing the series of demands to satisfy the claim and the series of offers to settle the claim, for use by the processor means in a series of rounds, without disclosure of the series of demands to the adverse entity or series of offers to the person;
settlement means for indicating, when set, settlements of disputes;
means for calculating a windfall adjusted settlement value when both the settlement means and the initiator means

46

are set, and for calculating normal payment values when the settlement means is set and the initiator means is not set;
comparison means within the processor means, for receiving and comparing demands and offers against each other on a round-by-round basis, in accordance with a preestablished condition and for setting the settlement means when the preestablished condition is satisfied;
means for inhibiting a reuse of an unsuccessful demand, or unsuccessful offer, by the comparison means in any round that is not a power round; and
means for communicating a settlement result to the person and the entity.

**73**. A system for automated dispute resolution comprising:
processor means for processing demands and offers;
means for introducing to the processor means, via a communications linkage, information identifying a dispute, a series of demands to satisfy a claim made by or on behalf of a person involved in the dispute, and a series of offers to settle the claim by an entity adverse to the person for the claim;
memory means, accessible by the processor means, for storing the information identifying the dispute, and for temporarily storing the series of demands to satisfy the claim and the series of offers to settle the claim, for use by the processor means in a series of rounds, without disclosure of the series of demands to the adverse entity or series of offers to the person;
settlement means for indicating, when set, settlements of disputes and calculating a settlement value for the dispute when set;
comparison means within the processor means, for receiving and comparing demands and offers against each other on a round-by-round basis, in accordance with a preestablished condition and for setting the settlement means when the preestablished condition is satisfied;
means for automatic on-line initiation of a transfer of the settlement value from the entity to the person in accordance with a preference indicated by one of the person or the entity;
means for inhibiting a reuse of an unsuccessful demand, or unsuccessful offer, by the comparison means in any other round; and
means for communicating a settlement result to the person and the entity;
wherein the system is an automated system configured to settle a dispute that does not require a non-disputant party to use human judgment or discretion in settling the dispute.

**74**. The system of claim **73** further comprising:
means for on-line generation of a settlement document including at least some of the dispute identifying information.

**75**. An automated method comprising steps for multi-round dispute resolution, the method comprising:
a first step for analyzing, using automation, pairs of values in normal rounds according to a first criterion, each of the pairs of values including one value provided by a first party and another value provided by a second party adverse to the first party with respect to a claim, the values in each pair of values differing in magnitude from each other;
a second step for determining, using automation, if the first criterion is satisfied in a round;

a third step for, when the first criterion is not satisfied, determining if a power round analysis is necessary;

a fourth step for, when the power round analysis is necessary, analyzing a pair of values in accordance with a power round criterion; and

a fifth step for, when either the first criterion is satisfied, or the first criterion is not satisfied but the power round criterion is satisfied, generating a payment to be made on the claim;

wherein the method is carried out using a system configured to settle a dispute that does not require a non-adverse party to use human judgement or discretion in settling the dispute.

**76**. The method of claim **75** further comprising:

a sixth step for constructing a claim specific facilitating message, for communication to at least one of the first and second parties, that does not reveal a value provided by the first party to the second party and vice-versa.

**77**. The method of claim **75** further comprising:

a step for adjusting the payment to provide a windfall benefit to either the first party, when the first party is an initiator for the claim, or the second party when the second party is the initiator for the claim.

**78**. The method of claim **75** further comprising:

a step for initiating an on-line transfer of funds equal to the payment from the whichever of the first or second party is a second entity for the claim to whichever of the first or second party is a claimant for the claim.

**79**. The method of claim **75** further comprising:

a step for on-line generation of documents including an identification of the claim, whichever of the first or second party is a claimant for the claim and the payment.

**80**. A method comprising:

settling a case by processing at least one demand submitted by a claimant and at least one corresponding offer submitted by a second entity for a claim in a round, of at least two rounds in accordance with at least one preselected criterion agreed to by the claimant and the second entity, the at least one demand and at least one corresponding offer being different from each other; wherein the method is carried out using a system configured to settle a dispute that does not require a non-disputant party to use human judgement or discretion in settling the dispute;

calculating a settlement payment of a specified value to be paid to the claimant to settle the case; and

automatically providing the settlement payment to the claimant and providing the settlement payment through at least one of:

i) crediting a payment card account, registered to the claimant, with the specified amount,

ii) wherein the payment card account is at least one of a credit card, debit card, charge card, entertainment card account,

iii) wherein the payment card account is at least one of a credit card, debit card, charge card, entertainment card account,

iv) crediting an affinity program account registered to the claimant according to the specified amount,

v) electronically initiating issuance of an insurance product for the settlement amount.

\* \* \* \* \*