Thomas A. Egan (TE 0141)
Flemming Zulack Williamson Zauderer LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9507

        and

Jan P. Weir (admitted *pro hac vice*)
Steven M. Hanle (admitted *pro hac vice*)
Jennifer A. Trusso (admitted *pro hac vice*)
Douglas Q. Hahn (DH 3032)
Stradling Yocca Carlson & Rauth
660 Newport Center Dr., Suite 1600
Newport Center, CA 92660
(949) 725-4000

Attorneys for Defendant
Apollo Enterprise Solutions, LLC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEBT RESOLVE, INC., <br><br>          Plaintiff, <br><br>    -v- <br><br> APOLLO ENTERPRISE SOLUTIONS, LLC, <br><br>          Defendant. | 07-cv-4531(JSR) <br><br> **ECF Case** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT OF PATENT NON-INFRINGEMENT**

## TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................................ ii

II.   Statement of facts .........................................................................................................3

    A.    Debt Resolve's '551 Patent ....................................................................................3

    B.    Debt Resolve's '741 Patent .....................................................................................5

    C.    Apollo's Intelligent Debt Solutions System ...........................................................6

    D.    Greenberg Traurig's Non-Infringement Opinion....................................................9

III.  Argument ....................................................................................................................10

    A.    The Standard For Summary Judgment In Patent Cases..........................................10

        1.    The Standard For Non-infringement..................................................................12

        2.    The ''551 and '741 Patent Claims .....................................................................13

IV.   Conclusion .................................................................................................................19

DOCSOC/1240184v2/100604-0001

Non-Confidential Redacted Version

## TABLE OF AUTHORITIES

**Page**

### CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248 (1986) ................................................................................10

*Asyst Techs., Inc. v. Emtrak, Inc.*,
    402 F.3d 1188, 1195 (Fed. Cir. 2005) ..........................................................15

*Avia Group  International, Inc. v. L.A. Gear California, Inc.*,
    853 F.2d 1557, 1560 (Fed. Cir. 1988) ..........................................................10

*Bland v. Norfolk & So. R.R. Co.*,
    406 F.2d 863, 866 (4th Cir. 1969) ................................................................11

*C.R. Bard, Inc. v. Advanced Cardiovascular, Inc.*,
    911 F.2d 670, 672 (Fed. Cir. 1990) ..............................................................10

*Carroll Touch, Inc. v. Electro Mechanical System, Inc.*,
    15 F.3d 1573, 1576 (Fed. Cir. 1993) ............................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322 (1986) ..........................................................................10, 11

*Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*,
    868 F.2d 1251, 1259 (Fed. Cir. 1989) ..........................................................12

*Cybersettle, Inc. v. National Arbitration Forum, Inc.*,
    2007 U.S. App. LEXIS 17537, *8-15 (Fed. Cir. 2007) ..................5, 6, 9, 13, 15, 18

*Desper Products, Inc. v. Qsound Laboratories, Inc.*,
    157 F.3d 1325, 1332 (Fed. Cir. 1998) ..........................................................10

*General Electric Co. v. Nintendo Co.*,
    179 F.3d 1350, 1359 (Fed. Cir. 1999) ..........................................................12

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*,
    45 F.3d 1550, 1560 (Fed. Cir. 1995) ............................................................11

*Intellicall, Inc. v. Phonometrics, Inc.*,
    952 F.2d 1384, 1389 (Fed. Cir. 1992) ..........................................................11

DOCSOC/1240184v2/100604-0001

Non-Confidential Redacted Version

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
  256 F.3d 1323, 1330 (Fed. Cir. 2001)..................................................................12

*Joy Techs. Inc. v. Flakt Inc.*,
  6 F.3d 770, 773 (Fed. Cir. 1993)......................................................................12

*Key Manufacturing Group, Inc. v. Microdot, Inc.*,
  925 F.2d 1444, 1449 (Fed. Cir. 1991)................................................................12

*Lemelson v. United States*,
  752 F.2d 1538, 1548-49 (Fed. Cir. 1985) ............................................................12

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967, 976 (Fed. Cir. 1995).................................................................12, 13

*NTP v. Research in Motion, Ltd.*,
  418 F.3d 1282, 1318 (Fed. Cir. 2005)..............................................12, 13, 15, 16, 18

*Oney v. Ratliff*,
  182 F.3d 893, 895 (Fed. Cir. 1999)..................................................................11

*Ormco Corp. v. Align Tech. Inc.*,
  463 F.3d 1299, 1311 (Fed. Cir. 2006)................................................................13

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
  429 F.3d 1364, 1379 (Fed. Cir. 2005)................................................................15

*Standard Havens Products, Inc. v. Gencor Industrial, Inc.*,
  953 F.2d 1360, 1374 (Fed. Cir. 1991)................................................................12

*Warner-Jenkinson Co. v. Hilton Davis Chemical*,
  520 U.S. 17, 26 (1997)................................................................................11

## STATUTES

Fed. R. Civ. P. 1 .......................................................................................11

Fed. R. Civ. P. 56(c) .................................................................................11

Fed. R. Civ. P. 56(e) .................................................................................10

Non-Confidential Redacted Version

## I.    INTRODUCTION

Defendant Apollo Enterprise Solutions, LLC, ("Apollo") hereby moves for summary judgment that its Intelligent Debt Solution does not infringe plaintiff Debt Resolve, Inc.'s ("Debt Resolve") U.S. Patent Nos. 6,954,741 (the "'741 Patent") and 6,330,551 (the "'551 Patent") (collectively. the "Patents-in-Suit").

Debt Resolve's Patents-in-Suit are directed to methods and systems for the automated negotiation of a monetary settlement between adverse parties.  In Debt Resolve's patented system, each adverse party submits a confidential bid and the bids are compared based on predetermined criteria to determine if a settlement is reached.  If no settlement is reached, the parties are given the opportunity to submit further bids.  In other words, Debt Resolve's patented, automated system receives bids from both sides, which are then processed to see if settlement is possible.  A crucial limitation to this patented system is that neither party's demands nor offers are disclosed to the other.  If a settlement is achieved, then both parties are notified.  If no settlement is reached, then the parties may submit further demands and offers in subsequent rounds.  Again, all such demands and offers are never disclosed to the adverse party.

Debt Resolve's admits that its infringement claim is based entirely on statements made in Apollo's advertisements.  Such statements are simply not enough for infringement of a method claim and definitely not enough to satisfy Debt Resolve's Rule 11 obligations.  To further convince Debt Resolve that Apollo's IDS system is far outside of the claims of the Patents-in-Suit (as well be explained below was previously recognized by Debt Resolve's counsel), Apollo produced relevant documents and offered its President, Chief Executive Officer, and designer of Apollo's system, G. Christopher Imrey, for a deposition.  In response to extensive questioning by Debt Resolve's counsel, Mr. Imrey explained, in detail, the workings of the Apollo IDS system.

In particular, Mr. Imrey testified that in use the Apollo's IDS system provides the debtor with one or more payment plans based upon the debtor's credit report.  Thus, when the debtor engages the system, the debtor is presented with several payment options generated by the

DOCSOC/1240184v2/100604-0001

Non-Confidential Redacted Version

system based on such factors as the debtor's credit rating and the delinquency of the debt.

REDACTED

Because these systems are so different, Apollo's G. Christopher Imrey and William J. House filed for a patent on several versions of their system, which was published on April 20, 2006 as Published Application No. 2006/0085332. Remarkably, the provisional application for the Apollo patent was filed by Debt Resolve's former attorneys of record Greenberg Traurig on October 19, 2004. Several weeks later, on October 27, 2004, Apollo sought an opinion from Greenberg Traurig that the Apollo IDS system did not infringe Debt Resolve's family of patents, including the '551 Patent. In February of 2005, attorneys at Greenberg Traurig issued an oral opinion of non-infringement, including the '551 Patent, and concluding that Apollo's product was so different that a written opinion was not necessary. Shortly after issuing this opinion, Greenberg Traurig withdrew its representation of Apollo. The basis for Greenberg Traurig's withdrawal soon became apparent when Greenberg Traurig filed this infringement action on behalf of Debt Resolve accusing the very Apollo IDS system that it had earlier cleared of infringement of infringing the very same Debt Resolve patents.

REDACTED

Based on the undisputed facts, the Apollo IDS system is so different from the inventions claimed in the Patents-in-Suit that Apollo is entitled to summary judgment that, as a matter of law, it does not infringe any claims of the Patents-in-Suit.

2

## II.    STATEMENT OF FACTS

### A.    Debt Resolve's '551 Patent

The '551 Patent is directed to an internet based, automated method and system for use in dispute resolution. Exh. 1[1] (the '551 Patent) Col. 1:40-49; Local Rule 56.1 Statement of Undisputed Material Facts ("SUMF"), ¶1. The '551 Patent system is designed for automated resolution of a dispute "made by or on behalf of a person involved in a dispute, such as a plaintiff in a lawsuit or other claimant, with at least one other person, such as a defendant, his or her insurer, or other sponsor." Exh. 1 (the '551 Patent) Col. 1:44-47; SUMF, ¶2. The '551 Patent system permits the adverse parties to reach a settlement through an automated dispute resolution system that receives the parties' settlement offers, prevents disclosure of the offers to the other party, and calculates whether, based on a preestablished condition or formula, the offers are close enough to result in a settlement. Exh. 1 (the '551 Patent) Col. 1:55 - Col. 2:40; SUMF, ¶3. If a settlement is reached, the parties are notified. Exh. 1 (the '551 Patent) Col. 9:16-19; SUMF, ¶4. If no settlement is reached, the parties are notified and may be presented a further opportunity or round to submit offers. Exh. 1 (the '551 Patent) Col. 9:48-52; SUMF, ¶4.

The '551 Patent provides an example of the system performing a comparison based on preestablished conditions as follows:

> If the offer in any round is less than the demand and within a preestablished percentage, for example thirty percent, of the demand in the same round, i.e. the offer is greater than or equal to seventy percent of the demand, the claim is settled for an amount in accordance with a first preestablished formula, for example, the median amount between the demand and the offer.

Exh. 1 (the '551 Patent) Col. 2:21-27; SUMF, ¶5.

Debt Resolve's Complaint asserts that the Apollo IDS system infringes the '551 Patent "including but not limited to claims 1, 2, 3, 6 and 27." Exh. 2 (the Complaint) ¶9; SUMF, ¶6.

---

[1] All exhibits herein refer to the exhibits annexed to the August 20, 2007 Declaration of Jennifer A. Trusso.

3

For the purposes of this motion, asserted claim 1 is exemplary of the claims in the '551 Patent. Claim 1 of the '551 Patent is as follows (the underlined claim elements are of particular relevance here):

> 1. A computer executable method for dispute resolution, operative to control a computer and stored on at least one computer readable medium, the method when executed comprising:
>
> a) receiving a plurality of demands from a first party for a claim;
>
> b) <u>receiving a plurality of settlement offers from a second party for the claim;</u>
>
> c) <u>preventing disclosure of the demands to the second party, and preventing disclosure of the settlement offers to the first party;</u>
>
> d) <u>calculating differences between the demands and the settlement offers</u> in rounds, each of the differences being calculated in a round using one demand and one settlement offer, the one demand and the one settlement offer being unequal in value;
>
> e) <u>determining whether any of the differences fall within at least one predetermined criterion;</u>
>
> f) if any of the differences fall within the at least one predetermined criterion, transmitting a message to the first party and the second party that the claim is resolved; and
>
> g) if the differences do not fall within the at least one predetermined criterion, transmitting a message that the claim has not been resolved.

Exh. 1 (the '551 Patent) claim 1; SUMF, ¶7.

Importantly, each claim in the '551 Patent (Exh. 1) requires that the system perform a comparison by "calculating differences between the demands and the settlement offers" and "determining whether any of the differences fall within at least one predetermined criterion."[2]

---

[2] Of course, the precise language may vary from claim to claim but the comparison limitation is present in each claim of the '551 patent.

4

Non-Confidential Redacted Version

SUMF, ¶8. Secondly, '551 Patent (Exh. 1) independent claims 1, 8, 32, 59, 132 and 142 require preventing disclosure of each party's bid from the other. Exh. 1 (the '551 Patent) claims 1, 8, 32, 59, 132 and 142; SUMF, 9. Finally, each claim in the '551 Patent (Exh. 1) requires receiving at least one offer from the second party and many claims require receiving multiple offers from the second party. Exh. 1 (the '551 Patent); SUMF, ¶10. The Federal Circuit Court of Appeals recently held in the case of *Cybersettle, Inc. v. National Arbitration Forum, Inc.*, 2007 U.S. App. LEXIS 17537, *8-15 (Fed. Cir. 2007) that the claims of the very same '551 Patent, require the receiving steps in the method to actually be performed (as opposed to being contingent) for there to be patent infringement. A copy of the *Cybersettle* case is Exh. 3; SUMF, ¶11.

**B.    Debt Resolve's '741 Patent**

The '741 Patent is a Continuation-in-part of the application that issued as the '551 patent and is directed to similar subject matter. Exh. 4 (the '741 Patent); SUMF, ¶12. As with the '551 Patent, the '741 Patent system permits the adverse parties to reach a settlement through an automated dispute resolution system that receives the parties' settlement offers, prevents disclosure of the offers to the other party, and calculates whether, based on a preestablished condition or formula, the offers are close enough to result in a settlement. Exh. 4 (the '741 Patent) Col. 3:54 - Col. 4:16 and Col. 4:65 - Col. 5:3; SUMF, ¶13. If a settlement is reached, the parties are notified. Exh. 4 (the '741 Patent) Col. 10:51-54; SUMF, ¶14. If no settlement is reached, the parties are notified and may be presented a further opportunity or round to submit offers. Exh. 4 (the '741 Patent) Col. 11:15-20; SUMF, ¶14. The '741 incorporates several improvements over the invention described in the '551 Patent, including the addition of a facilitator or "power round" that can be requested by the parties in the event that the rounds of negotiation are unsuccessful. Exh. 4 (the '741 Patent) Col. 1:39-43 and 5:38-55; SUMF, ¶15.

Debt Resolve's Complaint asserts that the Apollo IDS system infringes the '741 Patent "including but not limited to claims 42 and 51." Exh. 2 (the Complaint) ¶9; SUMF, ¶16. For the purposes of this motion, asserted claim 51 is exemplary of the claims in the '741 Patent. Claim

5

51 of the '741 Patent is as follows (the underlined claim elements are of particular relevance here):

> 51. A dispute resolution method for resolving a claim between two adverse parties in rounds, the method comprising: <u>automatically testing</u> non-equal <u>values, submitted by the adverse parties in at least two rounds</u> for the claim, <u>for satisfaction of a condition,</u> wherein the claim is not resolved if the condition is not satisfied; calculating a binding settlement payment, when the condition is satisfied by the non-equal values in a round of the at least two rounds, of an amount at least equal to a lowest of the non-equal values; and automatically, when the condition is satisfied, generating a settlement document for the claim containing case specific information; and wherein the method is performed by a system configured to resolve a dispute that does not require a non-disputant party to use human judgment or discretion in settling the dispute.

Exh. 4 (the '741 Patent) claim 51; SUMF, ¶17.

As with the '551 Patent, each claim in the '741 patent requires that the system perform a comparison on the offers submitted by the two parties by "automatically testing … for satisfaction of a condition."[3] Exh. 4 (the '741 Patent); SUMF, ¶18. In addition, as with the '551 Patent, each claim in the '741 Patent also requires receiving at least one offer from the second party and many claims require receiving multiple offers from the second party. *See Cybersettle, Inc. v. National Arbitration Forum, Inc.*, 2007 U.S. App. LEXIS 17537 (Fed. Cir. 2007) (Exh. 3); SUMF, ¶19.

### C. Apollo's Intelligent Debt Solutions System

Apollo provides internet-based solutions to creditors, collection agencies and legal recovery firms for debtor self-payment. *See* Exh. 5 (Imrey Decl.) ¶2; Exh. 6 (Imrey depo.) pp. 26:11-29:19; SUMF, ¶20. Apollo calls this system the "Intelligent Debt Solution" system or IDS. Exh. 5 (Imrey Decl.) ¶2; Exh. 6 (Imrey depo.) p. 75:22-23; SUMF, ¶21. Apollo's IDS system provides debtors an online debt payment option based on the debtors' current credit status

---

[3] As with the '551 Patent, the precise language may vary from claim to claim but the comparison limitation is present throughout the patent.

DOCSOC/1240184v2/100604-0001

Non-Confidential Redacted Version

and the delinquency of the debt. Exh. 5 (Imrey Decl.) ¶2; Exh. 6 (Imrey depo.) pp. 55:7-56:19; SUMF, ¶22. The Apollo IDS system is highly configurable and the creditor/customer may add functionality by adding "modules." Exh. 5 (Imrey Decl.) ¶2; Exh. 6 (Imrey depo.) pp. 67:3-69:24; SUMF, ¶23.

REDACTED

When the debtor logs in, the Apollo IDS system immediately calculates and presents to the debtor one or more payment options. *See* Exh. 7 (screenshot of the IDS system presenting a debtor with multiple payment plans in the "payment options" mode); SUMF ¶25.

REDACTED

Thus, the Apollo IDS system presents the debtor with a series of payment plans upon logging-in, which are based upon, *inter alia*, the debtors' current credit status.



REDACTED

If the debtor selects one of the payment plans, then the claim is resolved.  *See* Exh. 6 (Imrey depo.) p. 55:7-12; SUMF, ¶28.

REDACTED

DOCSOC/1240184v2/100604-0001

Non-Confidential Redacted Version

REDACTED

### D.    Greenberg Traurig's Non-Infringement Opinion

In early 2004, Apollo hired the law firm of Greenberg Traurig, LLP ("GT") as its general counsel. Exh. 5 (Imrey Decl.) ¶3; SUMF, ¶35. In September of 2004, Apollo retained GT patent law counsel Chris Darrow and Bruce Neel to perform patent work for Apollo. *Id.* at ¶6; SUMF, ¶36.

The patent work performed by GT specifically dealt with the prosecution of a patent or patents that would cover Apollo's accused IDS system. *Id.* at ¶5. As part of that prosecution, Darrow and Neel asked if Apollo knew of any existing "prior art" or intellectual property or similar company offerings and Apollo identified Debt Resolve and Debt Resolve's licensed patents from Cybersettle. *Id.* at ¶6.

Later, on October 22, 2004, Mr. Imrey and a few other Apollo officers and directors met with Neel and some of his colleagues in Phoenix. *Id.* at ¶8. During this meeting, Apollo specifically discussed Debt Resolve, its products and patents. *Id.* at ¶8. Next, on October 27, 2004, Apollo's Mr. Imrey asked Neel to take a look further into Debt Resolve's patents to provide Apollo advice on claim construction, infringement and validity. *Id.* at ¶9; SUMF, ¶37.

In February 2005, Apollo asked Darrow and Neel if Apollo needed a written opinion letter stating that Apollo is not infringing upon Debt Resolve's patents and that Apollo's patents are unique and independent. *Id.* at ¶12; SUMF,¶38. Shortly after Apollo's inquiry, Darrow and Neel provided Apollo with an oral opinion regarding non-infringement, claim construction and validity of Debt Resolve's patents, including the '551 Patent, concluding that Apollo's product was so different that a written opinion was not necessary. *Id.* at ¶13; SUMF, ¶39. Much of the discussion revolved around comparing Apollo's alleged infringing IDS system and the scope of Debt Resolve's patents. *Id*; SUMF, ¶40.

DOCSOC/1240184v2/100604-0001

Non-Confidential Redacted Version

Almost immediately thereafter, on February 23, 2005, Neel abruptly sent Mr. Imrey an email stating that GT would not be working any further on patent issues with Apollo. *Id.* at ¶14; SUMF, ¶41. Mr. Imrey later discovered this was because of a conflict of interest with Debt Resolve, who was also being represented by GT. *Id.* at ¶15; SUMF, ¶42. This conflict was confirmed when GT, on behalf of Debt Resolve, instituted this infringement action. Immediately after the lawsuit was filed, Apollo demanded that GT withdraw based on this conflict. GT refused and litigated the case, including filing motions and oppositions on behalf of Debt Resolve. GT insisted that it had never advised Apollo regarding Debt Resolve's patents. It was not until Apollo was forced to file a motion to disqualify, wherein it enclosed GT's correspondence addressing Debt Resolve's patents, did GT make any efforts to resolve the this clear conflict. However, the solution, GT and current counsel Albert Jacobs and Daniel Ladlow changing firms to Dreir LLP, is simply not enough to resolve this conflict. GT's knowledge of the advice it provided to Apollo is imputed to Messrs. Jacobs and Ladlow.

## III.    ARGUMENT

### A.    The Standard For Summary Judgment In Patent Cases

Summary judgment is as appropriate in a patent case as it is in any other case. *C.R. Bard, Inc. v. Advanced Cardiovascular, Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990). A motion for summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Desper Products, Inc. v. Qsound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). For a dispute to be "genuine" the evidence must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment.").

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Avia Group*

DOCSOC/1240184v2/100604-0001

Non-Confidential Redacted Version

*International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988) (quoting Fed. R. Civ. P. 1). As explained by one court, "the function of a motion for summary judgment is to smoke out if there is any case, *i.e.*, any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition." *Bland v. Norfolk & So. R.R. Co.*, 406 F.2d 863, 866 (4th Cir. 1969); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1560 (Fed. Cir. 1995). The patent holder may not rest upon pleadings or arguments, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Oney v. Ratliff*, 182 F.3d 893, 895 (Fed. Cir. 1999) (the "function of summary judgment is to eliminate factually unsupported claims").

A movant may meet its burden by providing evidence negating an essential element of the nonmovant's case or by pointing out the "absence of evidence to support the nonmoving party's case" with respect to an issue on which the nonmovant bears the burden. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1389 (Fed. Cir. 1992) (*citing Celotex*, 477 U.S. at 325). As the United States Supreme Court stated in *Celotex*:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element [i.e., factor] essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322. Because Debt Resolve bears the burden of proof on infringement, Debt Resolve "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Oney*, 182 F.3d at 895 (the "function of summary judgment is to eliminate factually unsupported claims").

### 1.    The Standard For Non-infringement

A product infringes a patent only if the product (i) literally infringes a patent claim or (ii) infringes a patent claim under the doctrine of equivalents. *Warner-Jenkinson Co. v. Hilton Davis*

DOCSOC/1240184v2/100604-0001

Non-Confidential Redacted Version

*Chemical*, 520 U.S. 17, 26 (1997). In order for there to be patent infringement, each and every claim element or its equivalent must be present in the accused device. *General Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1359 (Fed. Cir. 1999).

The Federal Circuit has set forth a two-step analytical approach to determine whether a patent claim has been infringed. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1330 (Fed. Cir. 2001) (*citing Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)); *Markman v. Westview Instruments*, 527 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). First, the patent claims that are allegedly infringed must be properly construed to determine their meaning and scope. *Carroll Touch*, 15 F.3d at 1576. Second, the claims, properly construed, must be compared to the accused devices. *Id.* A finding of patent infringement requires that every limitation of a claim be met literally or by a substantial equivalent. *Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1449 (Fed. Cir. 1991); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989). The absence of any element precludes a finding of infringement. *Id.*

To show infringement of method claims, the claims at issue in this case, a plaintiff must prove the modes in which the accused product has been operated and the manner in which those modes infringe the patent claims. Simply proving delivery and use of a device capable of being used, in some mode, to infringe a method claim is not enough. *Lemelson v. United States*, 752 F.2d 1538, 1548-49 (Fed. Cir. 1985). The Federal Circuit has repeatedly held that the law is unequivocal that the sale of equipment to perform a process is not infringement of a patent claiming the process. *Joy Techs. Inc. v. Flakt Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) (holding that "[t]he sale of [an apparatus capable of performing a claimed process is] not a direct infringement because a method or process claim is directly infringed only when the process is performed"); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991) (holding method claims were not infringed by the mere sale of an apparatus capable of performing the claimed process); *NTP v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed.

DOCSOC/1240184v2/100604-0001

Non-Confidential Redacted Version

Cir. 2005) ("[T]he use of a [claimed] process necessarily involves doing or performing each of the steps cited."); *Ormco Corp. v. Align Tech. Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) (rejecting an argument that a claim requiring the replacement of appliances can be performed if the appliances are merely "capable of" being replaced.)

Based on this well established principle, the Federal Circuit in *Cybersettle, Inc. v. National Arbitration Forum, Inc.*, 2007 U.S. App. LEXIS 17537, *8-15 (Fed. Cir. 2007), as stated above, reversed the District Court's holding that the claims of the very same '551 Patent were infringed because the accused product had the capability of performing the method claimed in the '551. *Id.* at *9 ("A patented method is a series of steps, each of which must be performed for infringement to occur. It is not enough that a claimed step be "capable" of being performed" citing *NTP*, 418 F.3d at 1318 and *Ormco Corp.*, 463 F.3d at 1311.)

Based on the function of Apollo's IDS system as adduced at the deposition of Mr. Imrey, Debt Resolve will not be able to produce any evidence to establish that each limitation of any claim of the Patents-in-Suit has been met, either literally or under the doctrine of equivalents.

### 2.    The ''551 and '741 Patent Claims

Typically, the next step in the non-infringement analysis is to construe the claims of the patents in suit. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). Due to their relationship and common claim terms, the claims of the '741 Patent must be construed to be consistent with the claims of the '551 patent and given their ordinary meaning. *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) (holding that because NTP's patents all derive from the same parent application and share common claim terms, it must interpret the claims consistently across all asserted patents), *cert. denied*, 546 U.S. 1157 (2006). Based upon the ordinary meaning of the claim terms in the Patents-in-Suit, it is obvious that the Apollo IDS system does not infringe those claims.



13

REDACTED

Both the '551 and '741 Patents disclose a method and system that compares the parties' offers against predetermined settlement criterion to see if a settlement can be reached. This limitation is present in each asserted claim and, indeed every claim in both of the Patents-in-Suit. Independent claim 1 of the '551 Patent (Exh. 1) requires:

> ... **calculating differences** between the demands and the settlement offers in rounds ... [and] **determining** whether any of the differences fall within at least one predetermined criterion ...

Similarly, independent claim 51 of the '741 Patent (Exh. 4) requires:

> ...**automatically testing** non-equal values, submitted by the adverse parties in at least two rounds for the claim, **for satisfaction of a condition**, wherein the claim is not resolved if the condition is not satisfied; **calculating** a binding settlement payment...

This '551 claim has been construed by the Federal Circuit in an earlier infringement action by its assignor Cybersettle. The Federal Circuit gave this claim language its ordinary meaning, determining that Claim 1 of the '551 Patent required:

> As demands and offers are received, **the system instantly compares each demand to the settlement offer for each [r]ound and determines if the offer and demand fall within a predetermined range of each other**. Id., col. 8, ll. 44-45. If the values are close enough, the case is settled for an amount between

14

the two values; if the values are not close enough, the claim is not settled. Id., col. 8, ll. 42-50.

*Cybersettle*, 2007 U.S. App. LEXIS 17537at *3 (emphasis added).  This construction applies equally to the '551 and '741 Patents. *See NTP*, 418 F.3d at 1293.

REDACTED

As the Apollo IDS system lacks, *inter alia*, one of the principal features of every claim in the Patents-in-Suit, there can be no infringement, either literally or under the doctrine of equivalents, which can cover substantially equivalent structures but cannot make up for a claim limitation that is entirely missing. *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005).

REDACTED

Both the '551 and '741 Patents disclose a system where neither party is able to access the others' offer.  Independent claim 1 of the '551 Patent (Exh. 1) requires:

15

> ...**preventing disclosure of the demands** to the second
> party, and **preventing disclosure of the settlement offers** to the
> first party...

For example, the '551 Patent explains that "[n]o strategies, evaluations, or other work product are directly or indirectly disclosed to anyone, including the adverse party." Moreover, both the '551 and '741 Patents teach that "offers and claimants demands that do not result in a settlement are never revealed to anyone." Exh. 1 (the '551 Patent) Col. 4:17-20 and Exh. 4 (the '741 Patent) Col. 4:67- Col. 5:2. This "encourages and enables plaintiffs to take a realistic approach to settlement with no risk of appearing irresolute or hesitant since the claimants' financial demands that do not result in settlement are never disclosed. Exh. 1 (the '551 Patent) Col. 5:40-44 and Exh. 4 (the '741 Patent) Col. 6:38-41. This claim limitation is required by '551 Patent independent claims 1, 8, 32, 40, 43, 49, 59, 78, 87, 132, 133, 142 and 156 and '741 Patent independent claims 1, 23, 56, 60, 61, 65, 71, 72 and 73.

The Federal Circuit gave this claim language its ordinary meaning, determining that Claim 1 of the '551 Patent required:

> ...the claimed invention automates dispute resolution
> through a computerized system that receives the parties' proposals
> (or "bids") for settling a claim [and] keeps the bids confidential...

*Cybersettle*, 2007 U.S. App. LEXIS 17537 at *2 (emphasis added). This construction applies equally to the '551 and '741 Patents. *See NTP*, 418 F.3d at 1293.

REDACTED

16

REDACTED

As the Apollo IDS system lacks, *inter alia*, one of the principal features of '551 Patent independent claims 1, 8, 32, 40, 43, 49, 59, 78, 87, 132, 133, 142 and 156 and '741 Patent independent claims 1, 23, 56, 60, 61, 65, 71, 72 and 73, there can be no infringement of those claims, either literally or under the doctrine of equivalents, as a matter of law.

Finally, both the '551 and '741 Patents require that the system actually receives at least one offer by the second party. Independent claim 1 of the '551 Patent (Exh. 1) requires:

> ...**receiving a plurality of settlement offers from a second party** for the claim...

Similarly, independent claim 51 of the '741 Patent (Exh. 4) requires:

> ...testing **non-equal values, submitted by the adverse parties** in at least **two rounds** for the claim...

This claim language was the subject of the Federal Circuit's reversal of the district court's claim construction in the *Cybersettle* matter.   The district court held that this claim term in the '551 Patent only required a system that was "capable" of receiving multiple offers, as opposed to a system that in fact received multiple offers.   *Cybersettle*, 2006 U.S. Dist. Lexis 82100, *18 (D. N.J. 2006).  The Federal Circuit reversed this hold, explaining:

> The method of claim 1 includes the steps of receiving a plurality of demands and receiving a plurality of settlement offers. '551 patent, col. 19, ll. 33, 35. … A patented method is a series of steps, each of which must be performed for infringement to occur. It is not enough that a claimed step be "capable" of being performed. A party that does not perform a claimed step does not infringe a method claim merely because it is capable of doing so.
>
> * * *
>
> With respect to claim 27, we agree … that the reference to testing bids "in one of at least two rounds" requires at least two rounds and therefore the receipt of two pairs of bids. According to the specification, a round is an opportunity to settle a claim by comparing a settlement offer and a demand. '551 patent, col. 7, ll. 28-32; col. 7, ll. 65-67. Hence, performing two rounds requires receiving two demands and two settlement offers.
>
> * * *
>
> In sum, independent claims 1 and 27 both require the receipt of at least two demands and at least two settlement offers.

*Id.* at *8-15 (citations omitted).  This construction applies equally to the '551 and '741 Patents.  *See NTP*, 418 F.3d at 1293.

REDACTED

Therefore, as the Apollo IDS system lacks, *inter alia*, a required feature of every method claim in the Patents-in-

18

Suit, there can be no infringement, either literally or under the doctrine of equivalents, as a matter of law.

## IV.    CONCLUSION

As shown herein, each independent (and necessarily each dependent) claim of the Patents-in-Suit require one or more of three claim limitations, each of which are absent from the accused Apollo IDS system.  Therefore, there can be no literal infringement, nor can there be infringement under the doctrine of equivalents.  For the foregoing reasons, Apollo respectfully requests that the Court grant summary judgment that the Apollo IDS system does not infringe any claim of Debt Resolve's Patents-in-Suit.

Date:  August 20, 2007
        Newport Beach, California

By: _____
Jan P. Weir (admitted *pro hac vice*)
Steven M. Hanle (admitted *pro hac vice*)
Jennifer A. Trusso (admitted *pro hac vice*)
Douglas Q. Hahn (DH 3032)
Stradling Yocca Carlson & Rauth
660 Newport Center Dr., Suite 1600
Newport Center, California  92660
(949) 725-4000

Thomas A. Egan, Esq.
Flemming Zulack Williamson Zauderer LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9507

*Attorneys for Defendant*
*Apollo Enterprise Solutions, LLC*

19

Confidential-Attorneys' Eyes Only Filed Under Seal