6. In September 2004, Apollo formally retained Darrow and Neel via an addendum to Apollo's corporate retainer agreement along with a check for $10,000. Attached hereto as Exhibit A is a true and correct copy of a September 18, 2004 email from Corinne Miller of Apollo to Anapoell at GT reflecting the addendum and additional $10,000 retainer. Darrow and Neel asked Apollo if we knew of any existing "prior art" or intellectual property or similar company offerings and we identified Debt Resolve and Debt Resolve's licensed patents from Cybersettle.

7. Due to a very short deadline to file provisional patent applications before a tradeshow, Apollo worked extensively with Darrow and Neel, and as a result of this intense working relationship, Darrow and Neel became intimately familiar with Apollo's software, screen shots, visio diagrams, power point presentation, methodology, business practices and other intellectual property issues. Darrow and Neel filed such provisional patent applications with the USPTO on October 19, 2004.

8. On October 22, 2004, I, as well as a few other Apollo officers and directors, met with Neel and some of his colleagues in Phoenix following the tradeshow referenced above. During this meeting, we specifically discussed Debt Resolve, its products and patents. We also asked Neel about filing additional patents surrounding the original patent filings and new intellectual property.

9. On October 27, 2004, I asked Neel to take a look further into Debt Resolve's patents to provide Apollo advice on claim construction, infringement and validity. As result of this request, Neel ordered the full Debt Resolve patent and he did a patent family check.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

DECL. OF CHRISTOPHER IMREY IN SUPPORT OF MOTION TO DISQUALIFY GREENBERG TRAURIG
DOCSOC/1215842v1/100604-0001

10. In November 2004, Neel came to Apollo's office for a meeting with me to further discuss Apollo's current and future intellectual property, its IDS system and Debt Resolve's patents.

11. Darrow and Neel both worked on the provisional patent applications **and** reviewed, analyzed and advised Apollo on the Debt Resolve patents.

12. In February 2005, Apollo asked Darrow and Neel if Apollo needed a written opinion letter stating that Apollo is not infringing upon Debt Resolve's patents and that Apollo's patents are unique and independent.

13. Shortly after Apollo's inquiry, Darrow and Neel provided Apollo with an oral opinion regarding infringement, claim construction and validity of Debt Resolve's patents, including the '551 patents-in-suit concluding that Apollo's product was so different that a written opinion was not necessary. Much of our discussion revolved around comparing Apollo's alleged infringing IDS system and the scope of Debt Resolve's patents.

14. On February 23, 2005, I asked Neel and Anapoell to help Apollo identify an attorney at GT to assist Apollo with negotiating a contract with a third party. Anapoell referred Apollo to GT lawyer Sean McMillan from GT's Los Angeles office. On that same day, Neel abruptly sent me an email stating that GT would not be working any further on patent issues with Apollo (including filing an "emergency" application prior to an upcoming trade show). Attached hereto as Exhibit B is a true and correct copy of Neel's February 23, 2005 email.

15. GT informed me that it could no longer work on Apollo's patent work because of a conflict of interest with Debt Resolve.

-3-