Albert L. Jacobs, Jr.
Daniel A. Ladow
Michael P. Bauer
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100
*Attorneys for Plaintiff*
*Debt Resolve, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBT RESOLVE, INC.,<br><br>               Plaintiff,<br><br>     -v-<br><br>APOLLO ENTERPRISE SOLUTIONS, LLC,<br><br>               Defendant. | Case No.: 07-cv-4531(JSR) |

## DEBT RESOLVE'S OPPOSITION TO APOLLO'S MOTION
## FOR SUMMARY JUDGMENT OF PATENT NON-INFRINGEMENT

## TABLE OF CONTENTS

Page

I.     Introduction...................................................................................................... 1

II.    Procedural Background--No Discovery Has Been Conducted Except A
       Limited Deposition Of Mr. Imrey...................................................................... 2

III.   Counter-Statement of Material Facts In Dispute ............................................... 3

A.     Overview Of The Patents-In-Suit ..................................................................... 3

B.     Contrary To Apollo's Assertions, The Patents Contain "System" Claims, In
       Addition To "Method" Claims........................................................................... 4

C.     Contrary To Apollo's Assertions, Numerous Patent Claims Do Not Require
       Confidentiality ................................................................................................. 5

D.     Material Facts In Dispute Concerning The Operation Of Apollo's System ..... 5

       1.   Apollo's Own Descriptions Of Its System State That The System
            Allows A Debtor To Negotiate By Making Counteroffers......................... 7

       2.   Apollo's Own Descriptions Of Its System State That A Settlement
            Can Be Negotiated In Real-Time And Be "Decisioned" By The
            System.................................................................................................... 9

       3.   Confidentiality In The IDS System........................................................ 11

       4.   One Experienced In The Field Would Understand That Apollo's
            Non-Litigation Descriptions Of Its System Involve Automated
            Dispute Resolution................................................................................ 12

       5.   Questions Regarding Mr. Imrey's Credibility Raise Fact Issues............. 12

       6.   Apollo's Greenberg Traurig Related Allegations Are Irrelevant
            And False .............................................................................................. 14

IV.    Argument:  Apollo's Motion Should Be Denied ............................................ 15

A.     Governing Legal Standards............................................................................ 15

B.     Apollo's Motion Should Be Denied Since Its Position Depends On All
       Patent Claims Either (i) Being Method, As Opposed To System, Claims
       Or (ii) Containing A Confidentiality Requirement Neither Of Which Is
       The Case........................................................................................................ 16

i

# TABLE OF CONTENTS CON'T

Page

C.   Apollo's Purported Non-Implementation Of The Module That Allows Debtors To Make Counteroffers Is Not Availing ........................................... 19

D.   There Is A Genuine Issue Of Fact As To Whether Apollo's System Assesses The Debtor's Counteroffer In An Automated Manner ................................... 20

E.   Apollo's Assertion That Its System Lacks Confidentiality Is Unavailing With Respect To Patent Claims Which Have No Such Requirement And, In Any Event, This Is A Disputed Fact Issue.............................................................. 22

F.   Illustrative Infringement Of Claim 131 ......................................................... 23

G.   Apollo's Motion Should Also Be Denied Pursuant To Rule 56(f)................ 24

H.   Apollo's Conflict Allegations Are As Irrelevant As They Are False............. 24

V.   Conclusion ..................................................................................................... 25

## TABLE OF AUTHORITIES

Page

**Federal Cases**

*Callicrate v. Wadsworth Mfg, Inc.*, 427 F. 3d 1361 (Fed. Cir. 2005)................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................15

*Cybersettle, Inc. v. NAF*, No. 2007-1092, 2007 WL 2112784 (Fed. Cir. July 24, 2007),
    *reh'g denied* (Fed. Cir. Aug. 28, 2007) .........................................................16

*Cyrix v. Intell Corp., 846 F. Supp 522 (E.D. Tex. 1994)* ..................................18

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000)..........................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)........................15

*McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576 (Fed. Cir. 1993)) ................22

*Phillips v. AWH Corp.*, 414 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...................................18

**Federal Statutes**

Fed.R.Civ.P. 26(a)(1)................................................................................................2

Fed.R.Civ.P. 56(c) ................................................................................................16

Fed.R.Civ.P. 56(f)...........................................................................................15, 24

35 U.S.C. §271(a) ...........................................................................................18, 19

35 U.S.C. §101................................................................................................17

**State Cases**

*St. Barnabas Hosp. v. New York City Health and Hospitals Corp.*, 775 N.Y.S.2d 9
    (N.Y.A.D. 1 Dept. 2004) ..................................................................................25

## I. Introduction

Debt Resolve, Inc. ("Debt Resolve") hereby submits its opposition to the motion of Apollo Enterprise Solutions, LLC ("Apollo") for Summary Judgment of Patent Non-Infringement.

This is an action for patent infringement. Debt Resolve is in the consumer debt collection business, is exclusively licensed under patents relating to an automated dispute resolution system for that field of use, and provides a software system that allows for the automated resolution of consumer debt matters. Apollo is also in the debt collection business and provides its customers with a software system, the accused system, used in connection with the collection of consumer debt.

Apollo's motion for summary judgment rests on two fundamentally inaccurate assertions about the claims of the patents and three material issues of fact which are in dispute.

Apollo's motion should be denied insofar as it rests on the assertion that all of the claims of the patents-in-suit, U.S. Patent Nos. 6,330,551 and 6,954,741 (the "'551 patent" and the "'741 patent", respectively), are method claims and that all claims have a confidentiality requirement. In fact, a number of the claims are system, not method claims, and many do not contain a confidentiality requirement.

Apollo's motion should also be denied insofar as it rests on the assertion that: ■

████████████████████████████████████████

████████████████████████████████ In fact, as detailed below, Apollo's non-litigation descriptions of its system plainly contradict points (i) and (ii), and point (iii), which is only relevant to the assertion of patent claims having a confidentiality requirement, is contradicted by the logical inference that can be made as to how the system operates based on Apollo's own descriptions.

Finally, there has been no discovery to date, except for the limited deposition of Apollo's President, G. Christopher Imrey. Apollo's assertions of purportedly "undisputed" issues of fact on which it bases its present motion rest on nothing more that Mr. Imrey's ipse dixit. However, as shown below, his credibility on these issues is lacking and his litigation-related assertions are contradicted by Apollo's non-litigation related descriptions of its systems.

## II. Procedural Background--No Discovery Has Been Conducted Except A Limited Deposition Of Mr. Imrey

At the June 29, 2007 Court conference in this action, the Court granted Apollo's request to be allowed to file a summary judgment motion before a Civil Case Management Plan was put into place. Accordingly, no initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) have yet been made, no discovery requests have been served and no documents have been produced in response to such requests. Nor, with one limited exception, have any depositions been taken. In connection with efforts to settle the case, on July 24, 2007 a limited deposition of Apollo's President Christopher Imrey was conducted. L.D. Ex. H.[1]

---

[1] "L.D." refers to the accompanying attorney declaration of Daniel A. Ladow, dated September 14, 2007; "L.D. Ex. __" refers to an exhibit thereto.

Prior to the Imrey deposition, Debt Resolve informally requested that Apollo provide documents relating to the operation and features of Apollo's accused system, including manuals, specifications, etc. L.D. at ¶ 4.   In response, Apollo did not produce any such written materials, claiming it had none.  *Id.*; *see also* L.D. Ex. H:  Imrey Dep. at 30:10 - 31:6.   Instead, Apollo produced a series of "screen shots" that fall into two categories: ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

Therefore, other than the limited Imrey deposition and Apollo's production of the screen shots described above, there has been no discovery of, including document production from or depositions of, any Apollo personnel whatsoever, nor has there been any discovery conducted of third parties, such as clients of Apollo's. L.D. at ¶ 5.  Among other things, Apollo has not produced any specifications or other system design-related documents or programming manuals, or any customized specifications for any client, nor any communications with clients or internal communications concerning system features. Neither has it produced the source code for its system or the various versions of its system. L.D. at ¶5.

## III.  Counter-Statement of Material Facts In Dispute

### A.  Overview Of The Patents-In-Suit

The '551 patent and the '741 patent (which resulted from a continuation-in-part application from the '551 patent) describe and claim a computerized system and method

of dispute resolution. The two patents are owned by Cybersettle Holdings, Inc., which has commercialized the systems and methods in the dispute resolution field.[2] Debt Resolve has an exclusive license from Cybersettle under both patents for resolving disputes relating to the collection of consumer debt. The '551 patent has 200 claims, 19 of which are independent claims. L.D. Ex. I. The '741 patent has 80 claims, 25 of which are independent claims. L.D. Ex. J.

In general, both patents disclose a system and method which allow parties to resolve their dispute in one or more rounds by having a demand made by one party compared with an offer made by another party through the automated application of a pre-established criterion, formula, algorithm or condition. The numerous claims of the patents recite different embodiments or features of the invention, with the claims of the '741 patent reciting enhancements such as the incorporation of facilitating communications and "power" rounds to assist resolutions between the parties.

Apollo makes two fundamentally inaccurate assertions about the claims of the patents: Apollo wrongly asserts or implies that all of the claims are "method" claims and that all claims have a "confidentiality" limitation. In fact, a number of the claims are "system" claims and numerous claims have no confidentiality requirement.

### B. Contrary To Apollo's Assertions, The Patents Contain "System" Claims, In Addition To "Method" Claims

In both patents, among the numerous claims are some which recite a claimed method and others which recite a claimed system. For example, in the '551 patent, independent claims 87, 131, 133 and 142 (and all their associated dependent claims)

---

[2] Cybersettle has, *inter alia*, a contract with the City of New York for resolving legal disputes against the City using Cybersettle's Automated Dispute Resolution System and Method.

claim a system, while other independent claims recite a method. L.D. Ex. I. The '741 patent also has numerous independent system claims, e.g., 56, 60, 61, 64, 65, 71, 72 and 73, in addition to a number of method claims. L.D. Ex. J. Ignoring all of the system claims, Apollo incorrectly asserts or implies that the patents only have method claims.[3]

### C. Contrary To Apollo's Assertions, Numerous Patent Claims Do Not Require Confidentiality

Some claims of the patents expressly recite a confidentiality requirement such that one party is prevented from seeing the offer or demand made by the other party. Apollo asserts that all the claims have such a limitation. This is false. A number of the claims of the patent do not contain such a confidentiality requirement. For example, in the '551 patent, none of independent claims 27, 66, 71, 78, 131 or 152 contain such a confidentiality requirement. L.D. Ex. I. Similarly, a number of the claims of the '741 patent have no such requirement, including independent claims 10, 24, 33, 42, 47, 48, 49, 50, 51, 52, 53, 54, 55, 64, 75 and 80. L.D. Ex. J.

### D. Material Facts In Dispute Concerning The Operation Of Apollo's System

There are at least three material factual issues in dispute.

[3] Whereas a method claim is infringed by performing the steps of the claimed method, a system claim is infringed by the defendant's creation (making), sale or offer for sale of the accused system.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ In addition, Apollo's marketing materials, as well as its related patent application, which is described as covering its system, expressly state that the system allows debtors to negotiate and make offers.

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ This asserted fact is in dispute because Apollo's marketing materials, as well as its related patent application, make clear that the system can provide either for the automated "decisioning" of a debtor's counteroffer or the offer can be sent to the creditor for review. In addition, even if the offer were sent to the creditor for "review" there is no evidence to suggest, much less show indisputably, that the creditor personnel does not simply apply a computerized algorithm to the debtor's counteroffer.

██████████████████████████████████████████████

████████████████████████████ Putting aside the fact that a number of the patents' claims do not contain a confidentiality requirement, this contention is in dispute (as relevant only to claims having such a requirement) because only further discovery can show whether Apollo's system operates with sufficient confidentiality to infringe such a claim and there is reason to believe, based on Apollo's own descriptions of its system that it does.

6

1.    **Apollo's Own Descriptions Of Its System State That The System Allows A Debtor To Negotiate By Making Counteroffers**

███████████████████████████████████████

███████████████████████████████████████

████████████████

Additionally, there are numerous publicly available statements by Apollo describing this aspect of its system, many of which are available on Apollo's website, www.apolloenterprise.com, which clearly state that Apollo's system allows debtors to negotiate a resolution by exchanging offers and counteroffers with the creditor. For example:

> [The Apollo IDS system] "[p]rovides debtors with the alternative to negotiate a settlement in real-time that may be decisioned using the system or reviewed by a collector."[5]
>
> \*            \*            \*
>
> "If the debtor is not presented with an offer that exactly matches his ability to pay he may also submit a negotiated offer to the creditor or creditor agent."[6]
>
> \*            \*            \*
>
> "A particularly unique feature is that the system also allows the debtor to counter-offer and essentially negotiate an alternative settlement."[7]
>
> \*            \*            \*
>
> [The system] "offers debtors an opportunity to propose an altogether different debt resolution schedule than any the system suggests."[8]
>
> \*            \*            \*
>
> "The Customer views current Account Data and settlement offers and selects the offer that best fits their ability to pay - or - The Customer may

---

[4] ████████████████████████████████████████

████████████████████████

[5] L.D. Ex. B.
[6] L.D. Ex. O.
[7] L.D. Ex. E.
[8] L.D. Ex. D.

also negotiate an alternative settlement online against Creditor-defined rules."[9]

Furthermore, Apollo is the assignee of at least six published U.S. patent applications (none of which has issued thus far as a patent) all of which name Mr. Imrey and another Apollo employee, William House, as the inventors of an automated system and method for resolving transactions.[10]  On the home page of its website and elsewhere, Apollo identifies its accused system as its Intelligent Debt Solution ("IDS") system. (*See, e.g.*, L.D. Ex. B at 1) These patent applications expressly state that a specific embodiment of the system described in the application is an IDS.[11]  Similarly, on the "About Us" page of Apollo's website, Apollo acknowledges that it regards these patent applications as describing its commercial system, stating: "[a]t the heart of Apollo's Intelligent Debt Solutions[TM] system is the patent-pending IDS Decision Engine[TM]  which provides Decisioning Intelligence[TM]... ."  L.D. Ex. C.  The detailed description of Apollo's IDS system set forth in these patent applications is, as relevant here, substantially the same as Apollo's non-litigation related descriptions of its commercial IDS system.

The patent applications clearly describe the IDS system as allowing debtors to submit offers to the creditor; for example:

> "At point **307**, the webpage generated by server **102** may also present, for example, an icon or button for the debtor to click to indicate a desire to negotiate other terms with the creditor using server **102**."[12]
>
> *                    *                    *
>
> "If rules are established to operate on the negotiation offer presented by the user/debtor, then the decision engine may evaluate the negotiation

---

[9] L.D. Ex. G: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
[10] L.D. Ex. A:  U.S. Patent Application Publication No. 2006/0085332, cover page.
[11] *See, e.g., id.* at ¶ 52.
[12] L.D. Ex. A at ¶ 113 (emphasis in original); *see also* ¶ 114 further detailing the debtor's ability to negotiate by submitting an offer.

offer with the assistance of the modules of **FIG. 2** to determine a response."[13]

      *            *            *

"At point **361**, the user either selects an offer or selects negotiation if it is offered. If negotiation is available and selected, the user/debtor is able to enter her offer at point **362**."[14]

> **2.** **Apollo's Own Descriptions Of Its System State That A Settlement Can Be Negotiated In Real-Time And Be "Decisioned" By The System**



However, as set forth in the Rosa Declaration, in the consumer debt collection industry it is highly desirable to provide such functionality (Rosa Dec. at ¶ 12), and, it is plain from Apollo's non-litigation descriptions of its system, as well as its patent applications, that Apollo describes its system as having that automated (computerized) functionality. *Id.* at ¶¶7-10. For example, as we have seen, Apollo's website plainly states:

> [The Apollo IDS system] "[p]rovides debtors with the alternative **to negotiate a settlement in real-time that may be decisioned using the system** or reviewed by a collector."[15]

The "See How It Works" video on the Apollo website explains that a debtor can submit an offer to the creditor and that:

---

[13] *Id.* at ¶ 116.
[14] *Id.* at ¶ 122.
[15] L.D. Ex. B at 4-5.

> **"This negotiated offer can be approved using predetermined rules and guidelines** or it can be held in a queue and approved by a collector or supervisor."[16]

Another description of Apollo's system contained in an article on its website declares that if a debtor makes an offer that meets certain criteria: "Apollo's IDS will accept the proposal on the spot." [17]    Another Apollo marketing piece states that if the debtor does not accept an initial offer by the creditor: "The Customer may also negotiate an alternative settlement online against Creditor-defined rules."[18]

Consistent with Apollo's marketing materials, Apollo's patent applications disclose that Apollo's IDS system uses rules (e.g., algorithms) placed by the creditor in the "decision engine" of the computer system to determine, in an automated manner, whether a resolution has been reached.    For example, a representative application discloses:

> **"If rules are established to operate on the negotiation offer presented by the user/debtor, then the decision engine may evaluate the negotiation** offer with the assistance of the modules of FIG. 2 to determine a response. For example, if 20% now, 80% over 3 years at 8% is received, the decision engine **206** may obtain rules and/or schemas that indicate the creditor has specified on a "first round" of negotiation, no offer of under 50% immediate payment is acceptable, but if an offer of less than 50% immediate payment is received, the decision engine and other modules are to offer 50% immediate payment and 50% financed at either a 12 or 24 month term at 10%. These counteroffers may be made to the user." [L.D. Ex. A at ¶116, emphasis added.]
>
>           *              *              *
>
> **If negotiation is available and selected, the user/debtor is able to enter her offer at point 362.    At point 363, the decision is evaluated, typically by the decision engine 206** but potentially by a creditor/credit agency representative or other entity, and the counteroffer is either accepted or a further offer is made. At this point, the system cycles back through . . . . [these various steps]. [*Id*. at ¶122, emphasis added.]

---

[16] L.D. Ex. O.
[17] L.D. Ex. D.
[18] L.D. Ex. G.

           \*          \*          \*

"The user/debtor may select an option and resolve the transaction or alternatively the server **102** may indicate the offer made by the user/debtor is acceptable to the creditor/credit agency based on the on the rules provided." [*Id*. at ¶117.]

           \*          \*          \*

"At this point, when an offer or set of offers or other selection offered on the page has been acted upon by the user/debtor, and the decision received may be transmitted from fill request offers module **610** to decision module **609** and to decision engine decide module **608**. The result is an appropriate action (negotiate, consider the transaction resolved, negotiation/session terminated, etc.) according to the rules established, including the possibility of transmitting further sets of offers where approved." [*Id*. at ¶135.]

### 3.      Confidentiality In The IDS System

Insofar as Debt Resolve asserts a patent claim which contains a confidentiality requirement, there is a material issue of fact as to whether Apollo's system meets that limitation. Assuming that Apollo's system works the way its non-litigation related descriptions say it does, there is sufficient confidentiality for purposes of infringement. Consider the situation where the creditor makes an offer to the debtor which the debtor declines and the debtor submits his own counteroffer which is then "decisioned" in real-time by the system based on rules and criteria the creditor provided to the "decision engine" (central processor) of the system. (*See* sections III, D, 1 & 2 above.) In that situation, the debtor's offer is confidential to creditor personnel (at least before it is acted on by the computer system) because it is not sent to them but instead is assessed in an automated manner by the decision engine. Also, the creditor's "floor" number, the lowest amount and most generous payment arrangements the creditor would be willing to accept based on computerized rules input by the creditor (which, as a logical matter, must be input to allow automated processing in this manner), is not disclosed to the debtor -- the debtor is not shown the creditor rules which govern whether, at what amount and at

11

what conditions the creditor is willing, as its "bottom line," to reach a resolution. *See also* Rosa Dec. at ¶ 11.

### 4. One Experienced In The Field Would Understand That Apollo's Non-Litigation Descriptions Of Its System Involve Automated Dispute Resolution

Richard Rosa, Debt Resolve's President and Chief Technology Officer, is knowledgeable about the consumer debt collection industry and is a designer of internet-based software systems. As set forth in his accompanying declaration, Mr. Rosa believes that it is regarded as highly desirable in the industry to allow debtors to make offers on their debts to creditors and to be able to assess and resolve such disputes in an automated manner. Rosa Dec. at ¶ 12. Moreover, based on Apollo's non-litigation related descriptions of its IDS system, such as those referred to above, he understands those descriptions to mean that Apollo is offering a system one of whose features is to allow debtors to make offers to creditors on their debts and to have that value compared with creditor criteria (or rules) for settlement, including the value at which (or above) the creditor is willing to settle, where such comparison and resolution is performed in an automated manner by Apollo's computerized IDS system. Rosa Dec. at ¶¶ 6-10. He believes those experienced in this field would understand Apollo's system to perform the same way. Rosa Dec. at ¶ 13.

### 5. Questions Regarding Mr. Imrey's Credibility Raise Fact Issues

The essential bases for Apollo's pre-discovery summary judgment motion are assertions made about its system by Mr. Imrey; in effect, Apollo's motion rests on Mr. Imrey's credibility not being in dispute -- but it is in dispute. Questions raised about his credibility concerning those assertions raise issues of material fact. For example: a recent Apollo press release states that Apollo is the "leading provider of web-based payment

and collection technology," that it has recently added "several marquee clients," including "one of the top three credit card issuers," that it is "now collecting over $1 billion annually," and has numerous strategic partnerships with companies such as IBM. L.D. Ex. F. And, of course, Apollo has filed numerous, detailed patent applications relating to its IDS system. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

        ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

---

19 ████████████████████████████████████████████████████
████████████████████████████████████████████████████

20 ████████████████████████████████████

The tenor of Mr. Imrey's testimony was also aptly captured by his evasiveness and defensiveness in responding to questions concerning Debt Resolve. Although Debt Resolve is plainly a competitor of Apollo's (as noted in an article posted on Apollo's website[21]) and despite Apollo having hired two senior Debt Resolve sales personnel[22] and despite Debt Resolve having sued Apollo months ago, ████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████

### 6.    Apollo's Greenberg Traurig Related Allegations Are Irrelevant And False

Although this case was commenced in New Jersey on January 8, 2007 and has been pending before this Court since May 30, 2007, and although Apollo has not made a motion to disqualify Debt Resolve's counsel, nevertheless, for reasons best known to Apollo, Apollo has seen fit to assert (Ap. Mem. at 9-10) that present counsel is conflicted. Present counsel moved to Dreier LLP from Greenberg Traurig LLP as of late May 2007. Apollo asserts that present counsel is conflicted based on the allegation (again, assertions by Mr. Imrey) that two other Greenberg attorneys, Messrs. Darrow and Neel, who ceased doing work for Apollo in February 2005, provided an oral opinion of non-infringement, claim construction and validity regarding Debt Resolve patents to Apollo in February 2005. *Id.* While irrelevant to the present motion, these and related assertions should not stand unanswered. Messrs. Darrow and Neel have both submitted declarations stating that they did no such analysis and provided no such opinion to Apollo

---

[21] L.D. Ex. D at 9.
[22] L.D. Ex. M; L.D. Ex. N.

14

(*see* L.D. Exs. K and L); nor is there any basis to suggest that present counsel were ever privy to or ever learned any confidential information of Apollo's (*see* L.D. at ¶¶ 8-10). Additional facts refuting these allegations are set forth in the Ladow Declaration at ¶¶ 6-10.

## IV. Argument: Apollo's Motion Should Be Denied

### A. Governing Legal Standards

Summary judgment is appropriate when, "after adequate time for discovery" (a phrase conspicuously elided from Apollo's citation, Ap. Mem. at 11), there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A summary judgment motion made prior to conducting discovery should be granted in "[o]nly the rarest of cases." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Fed.R.Civ.P. 56(f) provides that a court may deny, or order the continuance of, a summary judgment motion if it is shown by affidavit that discovery is necessary to present facts essential to the non-movant's opposition.

Apollo seeks a summary judgment of non-infringement. In order to determine infringement, asserted patent claims must be properly construed and then compared with the accused infringing product or process. *Callicrate v. Wadsworth Mfg, Inc.*, 427 F. 3d 1361, 1366 (Fed. Cir. 2005). Claim construction is a legal question for the court to decide while the question of whether the construed claims read on the accused product or

process is one of fact. *Id.* Therefore, the present motion should be denied if: (i) Apollo is wrong (or appears to be wrong at this preliminary stage of the case) on an issue of claim construction that bears on determining infringement; (ii) there is a material fact in dispute as to whether Apollo's system possesses (with respect to a system claim) or has been used to perform (with respect to a method claim) one or more functions required by one or more of Debt Resolve's patent claims; or (iii) the motion is premature and discovery is warranted under Rule 56(f). All three of these independent conditions for denial are present here.

### B. Apollo's Motion Should Be Denied Since Its Position Depends On All Patent Claims Either (i) Being Method, As Opposed To System, Claims Or (ii) Containing A Confidentiality Requirement Neither Of Which Is The Case

Contrary to Apollo's assertions, the patents-in-suit, as shown in section III(B) above, contain system, as well as method, claims. Nor did the Federal Circuit's recent decision, *Cybersettle, Inc. v. NAF*, No. 2007-1092, 2007 WL 2112784 (Fed. Cir. July 24, 2007), *reh'g denied* (Fed. Cir. Aug. 28, 2007) (*see* L.D. Ex. P), construing two of the independent claims of the '551 patent suggest, much less hold, otherwise.[23] The only independent claims before the Court in that case were claims 1 and 27 of the '551 patent, which, as recited therein, are method claims. Similarly, contrary to Apollo's assertion that all of the claims contain a confidentiality limitation, as shown in section III, C,

---

[23] The key ruling in that case was the Federal Circuit's rejection of the defendant's contention that the asserted claims required the submission of multiple bids before the first round comparison is run, holding, instead, that the asserted method claims cover a multi-round process for which offers and demands could be submitted at any time; the Court recently reaffirmed this ruling by denying the defendant's petition for rehearing. L.D. Ex. P.

above, numerous claims have no such requirement.  Claim 131 of the '551 patent

illustrates both points.  It reads:

> 131.  A dispute resolution application stored on at least one
> computer accessible storage medium for execution by a
> processor comprising:
>
> a plurality of modules which, when executed by the
> processor:
>
> accepts and compares paired monetary values submitted by
> two entities adverse to each other with respect to a claim,
>
> discards the paired monetary values which differ from each
> other by more than a specified range,
>
> calculates a settlement amount to be paid by one entity to
> another entity if a pair of the monetary values differ from
> each other within the specified range based upon the pair
> and then discards the pair, and
>
> provides the settlement amount for delivery to the two
> entities.

This claim does not recite a "method" comprising certain steps, but, rather, a

system which consists of an "application" stored on computer readable media which can

be executed by a processor comprising a "plurality of modules"[24] which can perform

certain functions when executed.[25]  This claimed system (or article of manufacture)

would be infringed by, *inter alia*, Apollo's making, selling or offering for sale "at least

one computer accessible storage medium" (e.g., a hard drive or CD) which contains an

---

[24] Apollo's IDS software system comprises a plurality of modules.  ███████████
████████ L.D. Ex. O.

[25] 35 U.S.C. § 101 provides: "Whoever invents or discovers any new and useful process,
machine, manufacture, or composition of matter, or any new and useful improvement
thereof, may obtain a patent therefor, subject to the conditions and requirements of this
title."  Technically, claim 131 may best be described as an article of manufacture under §
101, but it is colloquially appropriate and less cumbersome to refer to it as a system; the
infringement analysis is the same in any event.

application comprising the specified modules.[26]  Accordingly, Apollo's motion should be denied insofar as Apollo's motion relies on Debt Resolve's patents only containing method claims the steps of which must actually be performed in order to infringe.

Similarly, claim 131 (as well as numerous other claims, e.g. claim 27 of the '551 patent and claim 42 of the '741 patent) does not require that either party's offer or demand be kept confidential at any time from the other party.  Among the cardinal principles of claim construction are the following:

> It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude [....] we look to the words of the claims themselves ... to define the scope of the patented invention.[27]
>
> *          *          *
>
> [T]he claims measure the invention [....] if we once begin to include elements not mentioned in the claim, in order to limit such claim ..., we should never know where to stop [....] [therefore, it is important to] avoid importing limitations from the specification into the claims.[28]
>
> *          *          *
>
> Differences among claims can also be a useful guide in understanding the meaning of particular claim terms [....] For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.[29]

 The application of these principles, taken together with the absence of any confidentiality requirement in various claims, including claim 131, and the presence of an

---

[26] 35 U.S.C. § 271(a); *see Cyrix v. Intel Corp.*, 846 F.Supp 522, 536 (E.D.Tex. 1994), aff'd, 42 F.3d 1411 (Fed.Cir. 1994) (unpublished) ("To infringe an apparatus claim, it is not necessary for an accused device actually to be performing the functions specified by the claim. All that is required is that the device have the claimed structure, and that this structure in the device have the capability of functioning as described by the claim."); Chisum § 16.02(3)(a) (1997) (§ 271(a) "codifies the long-standing rule that making a patented product without use or sale will constitute infringement").

[27] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (internal quotations and citations omitted).

[28] *Id.* at 1312, 1323 (internal quotations and citations omitted).

[29] *Id.* at 1314 (citations omitted).

express confidentiality requirement in other claims, mandates the conclusion that such claims, which lack a confidentiality requirement cannot have a confidentiality requirement read into them that would limit the plain meaning and scope of the claim where no such requirement exists. Accordingly, insofar as Apollo's motion relies on the patents only containing claims which have a confidentiality requirement, Apollo's motion should be denied.

**C.** ████████████████████████████████████████

One contention that Apollo advances in support of its motion ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

This contention is easily dismissed.

First, this contention is based on the assertion that all of the patent claims are method claims and therefore have to be performed in order to be infringed. This is false. As shown above, claim 131, as well as other claims, are system claims. Claim 131, for example, is infringed in this respect ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ 35 U.S.C. §271(a); *Cyrix*, 846 F.Supp. at 538; Chisum §16.02(3)(1) (1977).

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Additionally, however, Mr. Imrey's assertions should not be taken at face value; his credibility on these issues is in question for the reasons set forth above in sections III, D, 5. In any event, as set forth in the accompanying Rule 56(f) Affidavit of Daniel Ladow, there simply has been no discovery which would allow Debt Resolve to determine what are the actual facts of the matter, such as would be disclosed by examining Apollo's source code for the various versions of its system, third party discovery, etc.

### D. There Is A Genuine Issue Of Fact As To Whether Apollo's System Assesses The Debtor's Counteroffer In An Automated Manner

In general, the claims of the patents-in-suit involve the automated application of an algorithm, criterion or condition to a value submitted by each party in order to determine if there is a settlement. Apollo contends that it is entitled to summary judgment because there is no genuine issue of fact as to whether its system automatically assesses the debtor's offer to determine if there is a resolution. Given that there has been no production of Apollo's source code, of any program specifications or indeed of any documentation that can be validated as accurately showing how Apollo's system, or various customized versions of its system, is constituted in this regard, it is evident that Apollo's sole basis for this contention is the bare assertions of Mr. Imrey.

However, in addition to (and reflecting) Mr. Imrey's lack of credibility on this issue, is the unmistakable fact that Apollo's own descriptions of its system, as evidenced by repeated, non-litigation-related statements on its website and in other marketing materials, as well as in its patent applications which describe its IDS system, ████ ██████████████████████████████ As shown in section III, D, 2 above, the Apollo website announces, for example, that Apollo's IDS system "[p]rovides debtors with the

alternative to negotiate a settlement in real-time that may be decisioned using the system or reviewed by a collector" and that a "negotiated offer can be approved using predetermined rules and guidelines." L.D. Exs. B and O. The patent applications, on which, of course, Mr. Imrey is one of the two named inventors, further detail how the "decision engine," based on rules and criteria entered by the creditor, automatically assesses the debtor's counteroffer(s) and determines whether there is a resolution. See section III, D, 2, above and L.D. Ex. A at ¶¶ 116-7, 122 and 135.

In addition, Mr. Rosa, Debt Resolve's President and Chief Technology Officer, who is knowledgeable about the industry and the operation of internet-based software systems confirms that such an automated feature is regarded as highly desirable in the industry and that he and others experienced in the field would understand Apollo's non-litigation-related descriptions of its system to include such an automated function. Rosa Dec. at § 13.

Mr. Imrey's patent applications are fully consistent with the descriptions of the Apollo system found in Apollo's non-litigation marketing materials. The single discordant, inconsistent note is provided by Mr. Imrey's litigation-related assertions. Mr. Imrey's questionable, litigation-related assertions on this issue cannot support a judgment as a matter of law. This is particularly true here since, numerous non-litigation descriptions by Apollo (and Mr. Imrey himself) of its system contradict Mr. Imrey's present assertions and there has been no discovery that would allow Debt Resolve to test the validity of those assertions.[30]

---

[30]Conclusory assertions cannot by themselves defeat a motion for summary judgment (*see, e.g.*, *McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576, 1578 (Fed. Cir. 1993)); conversely, conclusory assertions denying the existence of a certain fact cannot

### E.  Apollo's Assertion That Its System Lacks Confidentiality Is Unavailing With Respect To Patent Claims Which Have No Such Requirement And, In Any Event, This Is A Disputed Fact Issue

As shown above, a number of the claims of the patents-in-suit, e.g. claims 27 and 131 of the '551 patent and claim 42 of the '741 patent, have no confidentiality requirement; therefore, as to those claims Apollo cannot show non-infringement as a matter of law based on the contention that its system does not keep offers and demands confidential.

Moreover, even as to those claims that do have a confidentiality requirement, Apollo's motion must fail because there is a genuine issue of material fact as to whether Apollo's system has sufficient confidentiality to infringe those claims.  As discussed in sections III, D, 1, & 2 above, according to Apollo's non-litigation-related descriptions of its system, the creditor may make an offer to the debtor.  If the debtor declines, the debtor can then submit her own offer which is then "decisioned" in real-time by the system based on rules and criteria the creditor input to the "decision engine" (central processor) of the system.  In this posture, the debtor's offer is confidential to creditor personnel (at least before it is acted on by the computer system) because it is not sent to them but instead is assessed in an automated manner by the decision engine.  Similarly, the creditor's "floor" number, the lowest amount and most generous payment arrangements the creditor would be willing to accept based on computerized rules input by the creditor (which must be input to allow automated processing in this manner) is not disclosed to the debtor -- the creditor rules which govern whether, at what amount and at what

---

support a motion for summary judgment, particularly where such assertions are pre-discovery and contradicted by numerous other statements made by the movant.

conditions the creditor is willing, as its "bottom line", to reach a resolution are not disclosed to the debtor. *See also* Rosa Dec. at ¶ 11. This confidential manner of operation of this aspect of the system would infringe claims having a confidentiality requirement, either literally or under the doctrine of equivalents. In any event, these non-litigation-related descriptions of Apollo's system and the necessary logical inference they entail about the existence of this degree of confidentiality in the system (even if only temporary as to the debtor's offer -- it is unlikely that under any circumstances a creditor would disclose its "bottom line" or "floor" rules or values to a debtor) clearly raise a genuine issue of material fact requiring denial of Apollo's motion.

### F. Illustrative Infringement Of Claim 131

It may be instructive briefly to show how Apollo's system infringes at least one illustrative claim.

| Claim 131 | Apollo's System |
|---|---|
| A dispute resolution application stored on at least one computer accessible storage medium for execution by a processor comprising: | |
| a plurality of modules which, when executed by the processor: | a plurality of modules which run on one or more computers: L.D. Ex. O. |
| accepts and compares paired monetary values submitted by two entities adverse to each other with respect to a claim, | which accepts and compares paired monetary values submitted by a debtor and a creditor ("decisioned in real-time" by the "decision engine"): L.D. Ex. B, G & O. |
| discards the paired monetary values which differ from each other by more than a specified range, | if the debtor's offer and the creditor's bottom-line settlement value differ by more than the range specified by the rules input by the creditor, that pair of values is discarded, not used: L.D. Ex. A at ¶122; L.D. Ex. B, G & O. |
| calculates a settlement amount to be | the "decision engine" calculates the |

23

| paid by one entity to another entity if a pair of the monetary values differ from each other within the specified range based upon the pair and then discards the pair, and | amount of the settlement if the debtor's offer is within the range specified by the rules input by the creditor: L.D. Ex. B, G & O. |
| provides the settlement amount for delivery to the two entities | informs the debtor and the creditor of the settlement amount: L.D. Ex. D at 9. |

Discovery would show whether method claims, such as claim 27 of the '551 patent and claim 42 of the '741 patent, are infringed by the use of Apollo's system.

### G. Apollo's Motion Should Also Be Denied Pursuant To Rule 56(f)

For all of the foregoing reasons relating to Apollo's incorrect assertions regarding the patent claims and because of the existence of genuine issues of material fact, Debt Resolve respectfully submits that the instant motion should be denied. In the event that the Court should decline to deny the motion on those grounds alone Debt Resolve also submits, pursuant to Fed.R.Civ.P. 56(f), the accompanying attorney affidavit of Daniel Ladow (the "Ladow Affidavit"), which details why discovery should be allowed to obtain information essential to material issues of fact on the present motion. In short, other than the limited Imrey deposition (conducted for settlement purposes) there has been no discovery, including no discovery with respect to Apollo's source code, program specifications, internal and customer communications, etc. Debt Resolve simply has not yet had the opportunity to test the validity of the bare assertions made by Mr. Imrey in this litigation -- assertions which are contradicted by numerous non-litigation-related descriptions by Apollo (and Mr. Imrey) of its system.

### H. Apollo's Conflict Allegations Are As Irrelevant As They Are False

Contrary to Mr. Imrey's bare assertions, Greenberg Traurig attorneys Darrow and Neel (who last did work for Apollo in February 2005) never provided Apollo an opinion

on infringement, claim construction or validity with respect to any patent licensed by Debt Resolve. L.D. Dec. Ex. K (Darrow Declaration) and Ex. L (Neel Declaration). Present Debt Resolve counsel have not been privy to nor learned any confidential Apollo information from their former fellow Greenberg shareholders, Messrs. Darrow and Neel. L.D. ¶ 9 & 10. Nor did Greenberg delay in investigating Apollo's baseless allegations when they were first raised. Id. at ¶ 8. Apollo has not made a disqualification motion, such should be barred by laches[30], and its having asserted these irrelevant allegations on this motion underscores the nature of Apollo's approach to this litigation as well as Mr. Imrey's lack of credibility.

## V.  Conclusion

For all these reasons, Debt Resolve respectfully submits Apollo's summary judgment motion should be denied.

Dated: September 14, 2007                    Respectfully submitted,

                                             DREIER LLP

                                    By: _____
                                             Daniel A. Ladow
                                             Albert L. Jacobs, Jr.
                                             Michael P. Bauer
                                             499 Park Avenue
                                             New York, New York 10022
                                             (212) 328-6100
                                             *Attorneys for Plaintiff Debt Resolve, Inc.*

---

[30] *See, e.g., St. Barnabas Hosp. v. New York City Health and Hospitals Corp.*, 775 N.Y.S.2d 9, 18 (N.Y.A.D. 1 Dept. 2004) "inordinate delay in moving for such relief is an indication that the motion has been made to gain a tactical advantage in the litigation").