Albert L. Jacobs, Jr.
Daniel A. Ladow
Michael P. Bauer
DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100
*Attorneys for Plaintiff*
*Debt Resolve, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBT RESOLVE, INC.,<br><br>Plaintiff,<br><br>-v-<br><br>APOLLO ENTERPRISE SOLUTIONS, LLC,<br><br>Defendant. | Civil Action No. 07-cv-4531 (JSR)<br><br>**ECF Designated Case** |

## DEBT RESOLVE'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1(b)

Pursuant to Rule 56.1(b) of the Local Rules of the United States District Court for the Southern District of New York, Plaintiff Debt Resolve, Inc. ("Plaintiff" or "Debt Resolve") responds to the Rule 56.1 statement submitted by Defendant Apollo Enterprise Solutions, LLC ("Defendant" or "Apollo") and sets forth additional material facts as to which there are genuine issues to be tried.

As more fully set forth in the accompanying Rule 56(f) Affidavit of Daniel A. Ladow, dated September 14, 2007 (the "Ladow Affidavit" or "Ladow Aff.") and in Debt Resolve's accompanying Opposition to Apollo's instant motion, there has been no discovery in this action other than a limited deposition of Apollo's President, which was conducted in connection with

settlement discussions, and many of the alleged undisputed material facts set forth by Apollo must now be the subject of discovery. While Debt Resolve believes it has presented sufficient facts in its Opposition to mandate denial of Apollo's summary judgment motion, it is also clear that if the Court should disagree, then discovery is required, pursuant to Fed. R. Civ. Pro. 56(f), before Debt Resolve could respond with additional facts (such as based on, for example, a review of Apollo's source code for its system and variants of its system, system specifications, communications with clients, etc.,) to further support Debt Resolve's Opposition and to show the clear presence of material facts in dispute. In those instances where such Rule 56(f) discovery is pertinent to Apollo's assertion of an undisputed fact, it shall be indicated below by the notation "Denied per Rule 56(f)," and shall be further supported in the Ladow Affidavit.

    A large proportion of the purported undisputed material "facts" set forth in Apollo's Rule 56.1 Statement concern not issues of fact such as could be tried by a factfinder, but rather legal conclusions constituting assertions about or characterizations of the scope and meaning of the claims of the patents-in-suit. A Rule 56.1 Statement, however, is not the place to brief issues of patent claim construction which are legal questions (given de novo review on appeal) which must be determined by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1455-56 (Fed.Cir.1998) (*en banc*). (Here, taken together, the two patents-in-suit have a total of 280 claims.) In those instances where Apollo sets forth a purported undisputed material "fact" that is actually an issue of claim construction and therefore not appropriately the subject of a Rule 56.1 Statement since a rebuttal requires legal argument, such is indicated by the notation: "This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim

construction." Debt Resolve reserves the right to advance additional responses and arguments with respect to any such legal issue relating to claim construction.

**SPECIFIC RESPONSES**

1. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. The claims of the patents are not limited to the scope alleged, although certainly a number of claims are directed to an automated method and system for dispute resolution that can be used over the Internet. See the patent claims set forth in each of the patents, L.D. Exs. I and J.[1]

2. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. The '551 patent[2] contains system and method claims; *see* L.D. Ex. I. The illustrative statement quoted from the specification is not a patent claim. However, Debt Resolve agrees that the claimed invention covers, *inter alia*, the settlement of a dispute between at least two parties or entities in an automated manner.

3. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. The claims of the patent are not limited to the scope alleged, *see* L.D. Ex. I. Insofar as this allegation is a paraphrase from sections of the specification, it is not a patent claim. Debt Resolve agrees that certain claims specify a system and method as generally described in this statement, but other claims are broader in scope.

---

[1] References to "L.D. Ex. __" are to exhibits to the Declaration of Daniel A. Ladow, dated September 14, 2007, submitted in support of Debt Resolve's opposition to Apollo's instant motion.
[2] Defined terms not defined herein shall have the meaning ascribed to them in Debt Resolve's accompanying Opposition to Apollo's summary judgment motion.

4. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. These paraphrases from the specification are not patent claims; *see* L.D. Ex. I. Debt Resolve agrees that some embodiments of the invention can operate in the manner described. Other embodiments operate differently.

5. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. The '551 patent has both method and system claims; *see* L.D. Ex. I. However, Debt Resolve agrees that this is an accurate quotation from a portion of the specification of the '551 patent and that this passage illustrates one embodiment of the claimed invention wherein an offer and a demand are compared in a given round based on a certain preestablished algorithm or conditions.

6. Admitted.

7. Admitted that this is an accurate quotation of claim 1 of the '551 patent.

8. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. The '551 patent has 200 claims. L.D. Ex. I. While claim 1 (and its dependent claims) has the quoted language, other claims have different language and different scope than claim 1. Moreover, some claims of the '551 patent are system claims and others are method claims.

9. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. While each of these claims, 1, 8, 32, 59, 132 and 142 of the '551 patent contain a confidentiality requirement, the meaning and scope of that requirement in each claim needs to be assessed individually. *See* L.D. Ex. I. In addition, numerous claims in the '551 patent contain no confidentiality requirement, *see, e.g.*, L.D. Ex. I, claims 27 and 131.

10. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. This statement does not accurately describe how the parties submit offers or demands in various claims nor does it accurately describe the conditions under which, on an individual claim basis, one or the other party may submit more than one offer (or demand). *See* L.D. Ex. I.

11. Denied. The holdings of the *Cybersettle* case recently decided by the Federal Circuit were directed to claims 1, 2, 3, 4, 6, and 27 of the '551 patent only; *see* L.D. Ex. P. In addition, this statement, which characterizes the holdings of a decision by the Court of Appeals, is not an assertion of fact, but a matter of legal interpretation.

12. Denied. It is correct that the '741 patent is a continuation-in-part of the '551 patent. However, as to the scope of the claims of the patents, this is the assertion of a legal conclusion regarding the patent and is an issue of, or relating to, claim construction. "Directed to similar subject matter" is not a phrase having legal precision. It is accurate to say that the '741 patent is directed to the general field of the invention of the '551 patent, as well as to improvements and enhancements of the invention of that patent.

13. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. Paraphrases of the specification are not patent claims. Among other things, the '741 patent has both system and method claims and various claims are of different scope than what is generally described by Apollo, including the fact that a number of claims have no confidentiality requirement, such as claim 42. See the '741 patent claims generally, L.D. Ex. J.

14. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. Paraphrases of the specification are

not patent claims. Debt Resolve agrees that some embodiments of the invention can operate in the manner described. See the '741 patent claims generally, L.D. Ex. J.

15. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. Paraphrases of the specification are not patent claims. Debt Resolve agrees that certain claims of the '741 patent provide for a "power round" and/or for a facilitating message, but those embodiments are not limited to Apollo's description. See the '741 patent claims generally, L.D. Ex. J.

16. Admitted.

17. Admitted that this is an accurate quotation of claim 51 of the '741 patent.

18. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. The statement is a partial paraphrase of the language of claim 51 of the '741 patent, but other claims have different language. See the '741 patent claims generally, L.D. Ex. J.

19. Denied. This is the assertion of a legal conclusion regarding the scope of the patent and is an issue of, or relating to, claim construction. This statement does not accurately describe the scope of the claimed method or the claimed system nor does it accurately describe the conditions under which, various claims provide for one or more offers from one party and whether this occurs before or after one or more demands. *See* L.D. Ex. J.

20. Denied insofar as it is unclear what is meant by the phrase "debtor self-payment."

21. Admitted that Apollo calls its system the "Intelligent Debt Solution" system or "IDS."

22. Denied per Rule 56(f). However, Debt Resolve agrees that this statement is generally in accord with Apollo's marketing materials.

23. Admitted.

24. Denied per Rule 56(f).

25. Denied per Rule 56(f). However, Debt Resolve agrees that this statement is generally in accord with Apollo's marketing materials at least insofar as the Apollo system is used in part to submit an offer or offers by the creditor to the debtor.

26. Denied insofar as this testimony is being submitted for the truth of its assertions. Also, denied per Rule 56(f).

27. Denied. These assertions are contradicted by Apollo's non-litigation related statements describing how it system works, including the "decision engine" which automatically evaluates a debtor's counteroffer based on rules input by the creditor. *See, e.g.*, L.D. Exs. B, D, E, G and O. See also the evidence and statement of facts in dispute set forth in paragraphs 44 and 49-51 below.

28. Denied per Rule 56(f). However, Debt Resolve agrees that Apollo's marketing materials are generally to the effect that a claim can be resolved by Apollo's system if a debtor selects or agrees to, an offer made by, or on behalf of, the creditor.

29. Denied per Rule 56(f).

30. Denied per Rule 56(f).

31. Denied per Rule 56(f), in particular as to what modules have been implemented to date and what constitutes a "second mode" of operation.

32. Denied. This assertion is contradicted by Apollo's non-litigation related statements including its references to the operation of the "decision engine" of Apollo's system. *See, e.g.*, L.D. Exs. B, D, E, G and O. See also the evidence and statement of facts in dispute set forth in paragraphs 44 and 49-51 below. Also, denied per Rule 56(f).

7

33. Denied. This assertion is contradicted by Apollo's non-litigation related statements including its references to the operation of the "decision engine" of Apollo's system. *See, e.g.*, L.D. Exs. B, D, E, G and O. See also the evidence and statement of facts in dispute set forth in paragraphs 44 and 49-51 below. Also, denied per Rule 56(f).

34. Denied. This assertion is contradicted by Apollo's non-litigation related statements including its references to the operation of the "decision engine" of Apollo's system. *See, e.g.*, L.D. Exs. B, D, E, G and O. See also the evidence and statement of facts in dispute set forth in paragraphs 44 and 49-51 below. Also, denied per Rule 56(f).

35. Denied per Rule 56(f), particularly as to the characterization of Greenberg Traurig, LLP ("Greenberg") as Apollo's "general counsel." Debt Resolve is informed that in 2004 Greenberg did provide certain legal services to Apollo. Debt Resolve submits that these Greenberg related allegations are irrelevant to the present motion.

36. Admitted that in or about September 2004 Greenberg patent law attorneys Darrow and Neel were hired by Apollo to work on a provisional patent application for Apollo; and otherwise denied. *See* L.D. Ex. K (Darrow Dec. ¶ 3) and Ex. L (Neel Dec. ¶ 3). Debt Resolve submits that these Greenberg related allegations are irrelevant to the present motion.

37. Denied. See L.D. Ex. K (Darrow Dec. ¶ 5) and Ex. L (Neel Dec. ¶ 5). See also the evidence and statement of facts in dispute set forth in paragraph 54 below. Debt Resolve submits that these Greenberg related allegations are irrelevant to the present motion.

38. Denied. See L.D. Ex. K (Darrow Dec. ¶ 5) and Ex. L (Neel Dec. ¶ 5). See also the evidence and statement of facts in dispute set forth in paragraph 54 below. Debt Resolve submits that these Greenberg related allegations are irrelevant to the present motion.

39. Denied. See L.D. Ex. K (Darrow Dec. ¶ 5) and Ex. L (Neel Dec. ¶ 5). See also the evidence and statement of facts in dispute set forth in paragraph 54 below. Debt Resolve submits that these Greenberg related allegations are irrelevant to the present motion.

40. Denied. See L.D. Ex. K (Darrow Dec. ¶ 5) and Ex. L (Neel Dec. ¶ 5). See also the evidence and statement of facts in dispute set forth in paragraphs 52-54 below. Debt Resolve submits that these Greenberg related allegations are irrelevant to the present motion.

41. Denied. See L.D. Ex. K (Darrow Dec. ¶ 4) and Ex. L (Neel Dec. ¶ 4). Debt Resolve is informed that Messers. Darrow and Neel did not do any work for Apollo after February 2005. See also the evidence and statement of facts in dispute set forth in paragraphs 52-54 below. Debt Resolve submits that these Greenberg related allegations are irrelevant to the present motion.

42. Denied per Rule 56(f).

## ADDITIONAL MATERIAL FACTS AS TO WHICH THERE EXISTS A GENUINE ISSUE TO BE TRIED

43. ███████████████████████████████████████

44. Apollo has publicly described its IDS system as allowing debtors to negotiate a resolution by exchanging offers and counteroffers with the creditor. For example:

> [The Apollo IDS system] "[p]rovides debtors with the alternative to negotiate a settlement in real-time that may be decisioned using the system or reviewed by a collector." L.D. Ex. B.

> "If the debtor is not presented with an offer that exactly matches his ability to pay he may also submit a negotiated offer to the creditor or creditor agent." L.D. Ex. O.

> "A particularly unique feature is that the system also allows the debtor to counter-offer and essentially negotiate an alternative settlement." L.D. Ex. E.

9

> [The system] "offers debtors an opportunity to propose an altogether different debt resolution schedule than any the system suggests." L.D. Ex. D, pg. 9.

> "The Customer views current Account Data and settlement offers and selects the offer that best fits their ability to pay - or - The Customer may also negotiate an alternative settlement online against Creditor-defined rules." L.D. Ex. O; L.D. Ex. H: Imrey Dep. Tr. at 58:10-25.

45. Apollo is the assignee of at least six published U.S. patent applications (none of which has issued thus far as a patent) all which of name Mr. Imrey and another Apollo employee, William House, as the inventors of an automated system and method for resolving transactions. *See, e.g.*, L.D. Ex. A: U.S. Patent Application Publication No. 2006/0085332, cover page.

46. Apollo identifies its accused system as its Intelligent Debt Solution ("IDS") system. *See, e.g.*, L.D. Ex. B, pg. 1.

47. Apollo's patent applications expressly state that a specific embodiment of the system described in the application is an IDS. *See, e.g.*, U.S. Patent Applications Publication Nos.: 2006/0085330 at ¶ 50; 2006/0085331 at ¶ 52; 2006/0085332 at ¶ 52 (L.D. Ex. A); 2007/0156576 at ¶ 49); 2007/0156580 at ¶ 51; and 2007/0156581 at ¶ 51.

48. Apollo regards these patent applications as describing its commercial system, stating: "[a]t the heart of Apollo's Intelligent Debt Solutions™ system is the patent-pending IDS Decision Engine™ which provides Decisioning Intelligence™... ." L.D. Ex. C.

49. The patent applications describe the IDS system as allowing debtors to submit offers to the creditor; for example:

> "At point **307**, the webpage generated by server **102** may also present, for example, an icon or button for the debtor to click to indicate a desire to negotiate other terms with the creditor using server **102**." L.D. Ex. A at ¶ 113.

> "If rules are established to operate on the negotiation offer presented by the user/debtor, then the decision engine may evaluate the negotiation offer with the

assistance of the modules of **FIG. 2** to determine a response." L.D. Ex. A at ¶ 116.

50. Apollo has described its IDS system as being able to automatically evaluate a debtor counteroffer using pre-established creditor rules to determine if settlement is reached. For example:

> [The Apollo IDS system] "[p]rovides debtors with the alternative **to negotiate a settlement in real-time that may be decisioned using the system** or reviewed by a collector." L.D. Ex. B at 4-5.

> "**This negotiated offer can be approved using predetermined rules and guidelines** or it can be held in a queue and approved by a collector or supervisor." L.D. Ex. O.

> "Apollo's IDS will **accept the proposal on the spot**." L.D. Ex. D at 9.

51. Apollo's patent applications disclose that Apollo's IDS system uses rules (e.g., algorithms) placed by the creditor in the "decision engine" of the computer system to determine, in an automated manner, whether a resolution has been reached. For example:

> "**If rules are established to operate on the negotiation offer presented by the user/debtor, then the decision engine may evaluate the negotiation** offer with the assistance of the modules of FIG. 2 to determine a response. For example, if 20% now, 80% over 3 years at 8% is received, the decision engine **206** may obtain rules and/or schemas that indicate the creditor has specified on a "first round" of negotiation, no offer of under 50% immediate payment is acceptable, but if an offer of less than 50% immediate payment is received, the decision engine and other modules are to offer 50% immediate payment and 50% financed at either a 12 or 24 month term at 10%. These counteroffers may be made to the user." [L.D. Ex. A at ¶ 116 (emphasis added).]

> "**If negotiation is available and selected, the user/debtor is able to enter her offer at point 362. At point 363, the decision is evaluated, typically by the decision engine 206** but potentially by a creditor/credit agency representative or other entity, and the counteroffer is either accepted or a further offer is made. At this point, the system cycles back through . . . . [these various steps]." [L.D. Ex. A at ¶ 122 (emphasis added).]

> "The user/debtor may select an option and resolve the transaction or alternatively the server **102** may indicate the offer made by the user/debtor is acceptable to the creditor/credit agency based on the on the rules provided." [L.D. Ex. A at ¶ 117.]

"At this point, when an offer or set of offers or other selection offered on the page has been acted upon by the user/debtor, and the decision received may be transmitted from fill request offers module **610** to decision module **609** and to decision engine decide module **608**. The result is an appropriate action (negotiate, consider the transaction resolved, negotiation/session terminated, etc.) according to the rules established, including the possibility of transmitting further sets of offers where approved." [L.D. Ex. A at ¶ 135.]

52. There is sufficient confidentiality in Apollo's IDS system for purposes of infringement. Where the creditor makes an offer to the debtor which the debtor declines and the debtor submits his own counteroffer which is then "decisioned" in real-time by the system (*see* paragraphs 44 & 50 above), the debtor's offer is confidential to creditor personnel (at least before it is acted on by the computer system) because it is not sent to them but instead is assessed in an automated manner by the decision engine. Also, the creditor's "floor" number, the lowest amount and most generous payment arrangements the creditor would be willing to accept based on computerized rules input by the creditor is not disclosed to the debtor -- the debtor is not shown the creditor rules which govern whether, at what amount and at what conditions the creditor is willing, as its "bottom line," to reach a resolution. *See* Rosa Dec. at ¶ 11.

53. Greenberg Traurig, upon first hearing the conflict allegations made by Apollo in the California action, undertook an immediate internal investigation of Apollo's allegations concerning the actions of Greenberg Traurig attorneys Christopher Darrow and Bruce T. Neel. L.D. at ¶ 8.

54. Greenberg Traurig's investigation ultimately found that the allegations made by Apollo were without merit and, on that basis, refused to withdraw from the California action. L.D. at ¶ 8.

55. The declarations of attorneys Christopher Darrow and Bruce T. Neel, exhibits K and L of the Ladow Declaration, describe the various actions they undertook on behalf of

Apollo. No opinion, oral or otherwise, was provided to Apollo regarding any Debt Resolve patent. *See* ¶ 5 of L.D. Exs. K and L.

56. At no time at Greenberg Traurig were Mr. Jacobs or Mr. Ladow involved with any work for Apollo, and at no time did they acquire any knowledge about Apollo. L.D. at ¶¶ 9-10

Dated: September 14, 2007

DREIER LLP

By: _____
Daniel A. Ladow
Albert L. Jacobs, Jr.
Michael P. Bauer
499 Park Avenue
New York, New York 10022
(212) 328-6100
*Attorneys for Plaintiff
Debt Resolve, Inc.*